Michael F. Ram, (SBN #104805)
Mram@robinskaplan.com
**ROBINS KAPLAN LLP**
2440 West El Camino Real
Suite 100
Mountain View, CA  94040
Telephone: 650 784 4007
Facsimile: 650 784 4041

*To be Admitted Pro Hac Vice:*
Stacey P. Slaughter, (MN Bar No. 0296971)
Sslaughter@RobinsKaplan.com
**ROBINS KAPLAN LLP**
800 LaSalle Avenue
Suite 2800
Minneapolis, MN  55402
Telephone: 612 349 8500
Facsimile:  612 339 4181

Attorneys for Plaintiffs

(*Additional Attorneys Listed on Signature Page*)

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| CHRISTOPHER BERRY, KEVIN BURNS, LARRY FLOWERS, DIANA KING, DEE ROBERTS, and CARMA ROCKERS on behalf of themselves and all others similarly situated, | Case No.  8:19-cv-01403 |
| Plaintiffs, | **COMPLAINT—CLASS ACTION** |
| v. | **DEMAND  FOR JURY** |
| ZF TRW AUTOMOTIVE HOLDINGS CORP., HYUNDAI MOTOR AMERICA, INC., KIA MOTORS AMERICA, INC., AMERICAN HONDA MOTOR CO., INC., HONDA OF AMERICA MFG. INC., HONDA R&D AMERICAS, INC., TOYOTA MOTOR NORTH AMERICA, INC., TOYOTA MOTOR SALES, U.S.A., INC., and TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., | |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ............................................................................................. 1

II. PARTIES ....................................................................................................... 2

    A.  DEFENDANTS ....................................................................................... 2

    B.  PLAINTIFFS ......................................................................................... 4

III. JURISDICTION AND VENUE ..................................................................... 5

IV. FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS ...................... 6

    A.  Definitions ............................................................................................ 6

    B.  The Airbag Control Unit Defect and Investigation ............................. 8

    C.  Defendants Knew, or Should Have Known, about the ACU Defect ... 10

    D.  Defendants Concealed the Defect ...................................................... 14

V.      CLASS ACTION ALLEGATIONS .................................................. 15

    A.  Class Definitions ................................................................................ 15

    B.  Class Certification Requirements ...................................................... 16

VI. EQUITABLE TOLLING ............................................................................. 19

    A.  Discovery Rule ................................................................................... 19

    B.  Fraudulent Concealment ................................................................... 19

    C.  Estoppel ............................................................................................. 19

VII. CLAIMS FOR RELIEF ............................................................................. 20

    A.  Claims Asserted on Behalf of the Nationwide Class ........................ 20

    COUNT I RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO") (Violation of 18 U.S.C. § 1962(c)) (Against ZF-TRW and The Hyundai/Kia Defendants) ...................................................................... 20

    COUNT II RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO") (Violation of 18 U.S.C. § 1962(d)) (Against ZF-TRW and The Hyundai/Kia Defendants) ...................................................................... 29

    COUNT III BREACH OF THE IMPLIED AND WRITTEN WARRANTY MAGNUSON – MOSS WARRANTY ACT (15 U.S.C. §§ 2301, et seq.) (Against The Vehicle Manufacturer Defendants) ........................................................... 31

    COUNT IV FRAUD BY CONCEALMENT (Against All Defendants) .......................... 33

    COUNT V UNJUST ENRICHMENT (Against the Vehicle Manufacturer Defendants).. 35

    COUNT VI VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW (Cal. Bus. & Prof. Code § 17200, et seq.) .......................................................... 36

**TABLE OF CONTENTS**

Page

COUNT VII VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT (Cal. Civ. Code § 1750 *et seq.*) (Against All Defendants) .................................................. 39

B.   Claims Asserted on Behalf of the State Classes ................................................ 42

COUNT VIII VIOLATION OF THE SONG-BEVERLY WARRANTY ACT (Cal. Civ. Code § 1790 et seq.) (Against the Vehicle Manufacturer Defendants) ........................... 42

COUNT IX VIOLATIONS OF THE PRIVATE RIGHT OF ACTION FOR CONSUMER FRAUDS ACT (Iowa Code § 714h.1, *et seq.*) (Against All Defendants) ....................... 44

COUNT X BREACH OF IMPLIED WARRANTIES (Iowa Code §§554.2314, 554.2315, 554.13103, and 554.13212) (Against All Defendants) ........................................ 47

COUNT XI BREACH OF EXPRESS WARRANTY (Iowa Code §§ 554.2313, 554.13103, and 554.13210) (Against the Vehicle Manufacturer Defendants) ................. 48

COUNT XII VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT (Kan. Stat. Ann. § 50-623, *et seq.*) (Against All Defendants) .......................................... 51

COUNT XIII BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (Kan. Stat. Ann. §§ 84-2-314, 84-2A-103, and 84-2A-212) (Against All Defendants) .............. 54

COUNT XIV BREACH OF EXPRESS WARRANTY (Kan. Stat. Ann. §§ 84-2-313, 84-2A-103, and 84-2A-210) (Against All Defendants) ........................................... 55

COUNT XV VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT (Md. Code Com. Law § 13-101, *et seq.*) (Against All Defendants) ................................. 58

COUNT XVI BREACH OF IMPLIED WARRANTIES (Md. Code Com. Law §§ 2-314, 2-315, 2A-103, and 2A-212) (Against All Defendants) .................................... 61

COUNT XVII BREACH OF EXPRESS WARRANTY (Md. Code, Com. Law §§ 2-313, 2A-103, and 2A-210) (Against the Vehicle Manufacturer Defendants)........................... 62

COUNT XVIII NEW YORK BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (N.Y. U.C.C. Law §§ 2-314 and 2A-212) (Against all Defendants) ........................................................................................................ 65

COUNT XIX BREACH OF EXPRESS WARRANTY (N.Y. U.C.C. Law §§ 2-313 and 2A-210) (Against the Vehicle Manufacturer Defendants).................................. 66

COUNT XX VIOLATION OF THE NEW YORK GENERAL BUSINESS LAW § 349 69 (N.Y. Gen. Bus. Law § 349) (Against the Vehicle Manufacturer Defendants)................. 69

COUNT XXI VIOLATION OF THE NEW YORK GENERAL BUSINESS LAW § 350 (N.Y. Gen. Bus. Law § 350) (Against All Vehicle Manufacturer Defendants)................ 73

COUNT XXII VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT (Wash. Rev. Code §§ 19.86.010, *et seq.*) (Against All Defendants) ....................... 75

COUNT XXIII BREACH OF IMPLIED WARRANTIES (Wash. Rev. Code §§ 62A.2-314, 62A.2-315, 62A.2A-103, and 62A.2A-212) (Against All Defendants)................... 77

**TABLE OF CONTENTS**

COUNT XXIV BREACH OF EXPRESS WARRANTY (Wash. Rev. Code §§ 62A.2-313, 62A.2A-103, and 62A.2A-210) (Against The Vehicle Manufacturer Defendants)........... 78

VIII. PRAYER FOR RELIEF....................................................................................... 82

IX. DEMAND FOR JURY TRIAL ............................................................................ 83

1     Plaintiffs CHRISTOPHER BERRY, KEVIN BURNS, LARRY FLOWERS, DIANA

2  KING, DEE ROBERTS, and CARMA ROCKERS individually, and on behalf of all persons

3  within the United States, members of the New York State Class, California State Class, Iowa

4  State Class, Maryland State Class, Washington State Class, and Kansas State Class, allege the

5  following based upon information and belief, the investigation of counsel, and personal

6  knowledge as the factual allegations pertaining to themselves.

7                               **I. INTRODUCTION**

8     1.  This case stems from the continuing and deliberate decision by automakers and a major

9  parts supplier to not disclose a potentially deadly defect ("defect") within a critical safety device

10  in vehicles that were purchased by consumers in the United States.

11    2.  The defect involves the Airbag Control Unit ("ACU") designed and manufactured by

12  Defendant ZF-TRW Automotive Holdings Corp. and supplied to numerous automakers, including

13  Hyundai, Kia, Honda, Toyota, and FCA. This ACU defect is alarming because it is manifest only

14  during a collision, precisely when consumers needs its functionality most.

15    3.  The defect in the ACU occurs because the application-specific integrated circuit ("ASIC")

16  becomes overstressed by excess electrical energy during the collision. The result is that the

17  airbags fail to deploy and the pretensioners do not engage the safety belts.

18    4.  The National Highway Traffic Safety Administration's ("NHTSA") Office of Defects

19  Investigation ("ODI"), is investigating this potentially deadly defect and estimates that there are

20  approximately 12.3 million affected vehicles. This matter resembles the Takata airbag scandal,

21  which involved millions of vehicles and led to a massive recall and a class action settlement by

22  some vehicle manufacturers. Like the Takata scandal, this matter deals with defendants who have

23  failed to disclose a potentially fatal defect in a critical automotive safety systems. Defendants hid

24  this defect from consumers and government regulators. ZF-TRW, Hyundai, Kia, and FCA knew

25  about the defect for years before they took any action to inform consumers or repair defective

26  vehicles. Honda and Toyota knew, or should have known, about the defect.

27    5.  HMA, KMA, and FCA, have issued limited recalls for certain makes and models.

28  However, those limited recalls did not go far enough. Millions of drivers whose vehicles contain

these defective ACUs still risk serious injury and death. Honda and Toyota continue to refuse to recall their affected vehicles, despite knowing of the deadly ACU defect.

## II. PARTIES

### A. DEFENDANTS

6.  Defendant ZF TRW Automotive Holdings Corp. ("ZF-TRW") is incorporated in Delaware and is headquartered at 12001 Tech Center Drive, Livonia, Michigan. ZF-TRW is a key supplier of automotive parts, including safety systems, to auto manufacturers. ZF-TRW developed, designed, and supplied defective ACUs for installation by the defendant auto manufacturers in the Class Vehicles with the knowledge and intention that these parts would be installed in vehicles sold in all 50 states and the District of Columbia. ZF-TRW was formed in May 2015 following the acquisition of predecessor entity TRW Automotive Holdings Corp. by German multinational parts supplier ZF Friedrichshafen AG. All references to ZF-TRW include the actions of TRW Automotive Holdings Corp. prior to the acquisition.

7.  Defendant Hyundai Motor America, Inc. ("HMA") is a manufacturer and distributor of new motor vehicles under the Hyundai brand and is incorporated and headquartered in the state of California. Its principal place of business is located at 10550 Talbert Avenue, Fountain Valley, California. HMA distributes, markets, leases, warrants, and oversees regulatory compliance and warranty servicing of Hyundai brand vehicles through a network of over 800 dealers throughout the United States from its headquarters in California. HMA also creates and distributes the warranties and other written materials that accompany the sale and lease of Hyundai-branded vehicles throughout the United States, and makes decisions concerning warranty coverage of customer vehicles when problems arise.

8.  Defendant Kia Motors America, Inc. ("KMA") is a manufacturer and distributor of new motor vehicles under the Kia brand and is incorporated and headquartered in the state of California. Its principal place of business is located at 111 Peters Canyon Road, Irvine, California. KMA markets, leases, warrants, and oversees regulatory compliance and warranty servicing of Kia-brand vehicles through a network of over 700 dealers throughout the United States from its headquarters in California. KMA also creates and distributes the warranties and

other written materials that accompany the sale and lease of Kia branded vehicles throughout the United States, and makes decisions concerning warranty coverage of customer vehicles when problems arise.

9. Defendant American Honda Motor Co., Inc., ("American Honda") is a California corporation, with its corporate headquarters located at 1919 Torrance Boulevard, Torrance, California.

10. Defendant Honda of America Mfg., Inc. ("Honda Mfg.") is an Ohio corporation with its corporate headquarters located at 2400 Honda Parkway, Marysville, Ohio. Honda Mfg. is a subsidiary of Honda Motor. Honda Mfg. is involved in the design, manufacture, testing, marketing, distribution and sale of Honda vehicles in the United States.

11. Defendant Honda R&D Americas, Inc. ("Honda R&D") is a California corporation with its corporate headquarters located at 21001 State Route 739, Raymond, Ohio. Honda R&D is involved in the design, development, manufacture, assembly, testing, distribution and sale of Honda vehicles. Defendants American Honda, Honda Mfg., and Honda R&D are collectively referred to as "Honda" or the "Honda Defendants."

12. Honda designs, engineers, manufactures, markets and/or sells vehicles under the Honda and Acura brands in California and throughout the United States, through its network of authorized motor vehicle dealers. Honda engages in interstate commerce by selling vehicles through its authorized dealers located in every state of the United States, including within this District.

13. Defendant Toyota Motor North America, Inc. ("Toyota") is a Texas corporation with its corporate headquarters located at 6565 Headquarters Drive, Plano, Texas.

14. Defendant Toyota Motor Sales, U.S.A., Inc., ("TMS") is a Texas corporation with its corporate headquarters located at 6565 Headquarters Drive, Plano, Texas.

15. Toyota designs, engineers, manufactures, markets and/or sells vehicles under the Toyota brand in California and throughout the United States through its network of authorized motor vehicle dealers. Toyota engages in interstate commerce by selling vehicles through its authorized dealers located in every state of the United States, including within this District.

16. Toyota Motor Engineering & Manufacturing North America, Inc. ("TEMA") has its principal place of business at 6565 Headquarters Drive, Plano, Texas 75024. TEMA is responsible for Toyota's engineering design and development, research and development, and manufacturing activities in the U.S., Mexico, and Canada. TEMA is a subsidiary of Toyota. Defendants Toyota, TMS, and TEMA are collectively referred to as "Toyota" or the "Toyota Defendants."

**B.  PLAINTIFFS**

17. Plaintiff Christopher Berry resides in Bellmore, NY. He owns a 2012 Honda Civic, which he purchased new in February 2012 from Honda City Long Island in Levittown, NY. To Plaintiff's knowledge, the airbags in his vehicle have not been repaired or replaced. The value of Plaintiff's 2012 Honda Civic has been diminished as a result of the ACU defect. If Plaintiff had known about the ACU defect, Plaintiff would not have purchased his 2012 Honda Civic or would have paid less for it.

18. Plaintiff Kevin Burns resides in Antioch, CA. He owns a 2013 Honda Civic, which he purchased new in 2013 from Walnut Creek Honda in Walnut Creek, CA. To Plaintiff's knowledge, the airbags in his vehicle have not been repaired or replaced. The value of Plaintiff's 2013 Honda Civic has been diminished as a result of the ACU defect. If Plaintiff had known about the ACU defect, Plaintiff would not have purchased his 2013 Honda Civic or would have paid less for it.

19. Plaintiff Larry Flowers resides in West Burlington, IA. He owns a 2014 Kia Sedona, which he purchased new in May 2014 from Billion Motors in Iowa City, IA. To Plaintiff's knowledge, the airbags in his vehicle have not been repaired or replaced. The value of Plaintiff's 2014 Kia Sedona has been diminished as a result of the ACU defect. If Plaintiff had known about the ACU defect, Plaintiff would not have purchased his 2014 Kia Sedona or would have paid less for it.

20. Plaintiff Diana King resides in Sparrows Point, MD. She owns a 2014 Kia Sedona, which she purchased new in August 2013 from Bob Bell Kia in Baltimore, MD. To Plaintiff's knowledge, the airbags in her vehicle have not been repaired or replaced. The value of Plaintiff's

2014 Kia Sedona has been diminished as a result of the ACU defect. If Plaintiff had known about the ACU defect, Plaintiff would not have purchased her 2014 Kia Sedona or would have paid less for it.

21. Plaintiff Dee Roberts resides in Raymond, WA. She owns a 2013 Toyota Avalon, which she purchased new in 2013 from Toyota of Olympia in Tumwater, WA. To Plaintiff's knowledge, the airbags in her vehicle have not been repaired or replaced. The value of Plaintiff's 2013 Toyota Avalon has been diminished as a result of the ACU defect. If Plaintiff had known about the ACU defect, Plaintiff would not have purchased her 2013 Toyota Avalon or would have paid less for it.

22. Plaintiff Carma Rockers resides in Olathe, KS. She owns a 2013 Hyundai Sonata, which she purchased new in 2013 from McCarthy Olathe Hyundai in Olathe, KS. To Plaintiff's knowledge, the airbags in her vehicle have not been repaired or replaced. The value of Plaintiff's 2013 Hyundai Sonata has been diminished as a result of the ACU defect. If Plaintiff had known about the ACU defect, Plaintiff would not have purchased her 2013 Hyundai Sonata or would have paid less for it.

### III. JURISDICTION AND VENUE

23. This Court has jurisdiction over this Action pursuant to 28 U.S.C. §§ 1331, 1961, 1962 and 1964, because Plaintiffs' RICO and Magnuson-Moss claims arise under federal law. Also, jurisdiction is proper in this Court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from one Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

24. In addition, under 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over the state law claims because all of the claims are derived from a common nucleus of operative facts and are such that Plaintiffs ordinarily would expect to try them in one judicial proceeding.

25. This Court has personal jurisdiction over Plaintiffs because Plaintiffs submit to the Court's jurisdiction.

26. This Court has personal jurisdiction over Defendants because they conduct substantial

business in the State of California and this District; and some of Plaintiffs' claims arise out of Defendants operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state, committing a tortious act in this state, and causing injury to property in this state arising out of Defendants' acts and omissions outside this state; and, at or about the time of such injuries, Defendants were engaged in solicitation or service activities within this state, or products, materials, or things processed, serviced, or manufactured by Defendants elsewhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

27. Venue properly lies within this judicial district pursuant to 28 U.S.C. §1391(b)(1) and (c)(2) because Defendants' contacts are sufficient to subject them to personal jurisdiction in this District, and therefore, Defendants reside in this District for purposes of venue, or under 28 U.S.C. §1391(b)(2) because certain acts giving rise to the claims at issue in this Complaint occurred, among other places, in this District. Also, venue is proper in this District pursuant to 28 U.S.C. §1407.

## IV. FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### A. Definitions

28. Plaintiffs bring this action on behalf of themselves and all persons similarly situated who purchased or leased Class Vehicles (defined below). Plaintiffs seek redress individually and on behalf of those similarly situated for economic losses stemming from the ZF-TRW, HMK, KMA, Honda, and Toyota's manufacture, sale or lease, and false representations concerning the defective airbags in the Class Vehicles, including but not limited to diminished value. Plaintiffs, on behalf of themselves and those similarly situated, seek to recover damages, statutory penalties, and injunctive relief/equitable relief.

29. All Class Vehicles are equipped with an air bag system containing the ACU defect. The list of Class Vehicles may expand as discovery proceeds, but currently, these "Class Vehicles" include the following: 2014-2019 Acura RLX; 2014-2019 Acura RLX HYBRID; 2012-2014 Acura TL; 2015-2017 Acura TLX; 2012-2014 Acura TSX; 2014 Acura TSX SPORT WAGON; 2012-2013 Acura TSX SPORTSWAGON; 2010-2011 Dodge NITRO; 2012-2019 Fiat 500; 2013-

2015 Honda ACCORD; 2014-2015 Honda ACCORD HYBRID; 2012-2015 Honda CIVIC; 2012-2015 Honda CIVIC GX; 2012-2015 Honda CIVIC HYBRID; 2012-2015 Honda CIVIC SI; 2012-2016 Honda CR-V; 2012-2017 Honda FIT; 2013-2014 Honda FIT EV; 2012-2014 Honda RIDGELINE; 2013-2019 Hyundai SONATA; 2013-2019 Hyundai SONATA HYBRID; 2015-2017 Jeep COMPASS; 2010-2012 Jeep LIBERTY; 2015-2017 Jeep PATRIOT; 2010-2018 Jeep WRANGLER; 2013 Kia FORTE; 2013 Kia FORTE KOUP; 2013-2019 Kia OPTIMA; 2012-2016 Kia OPTIMA HYBRID; 2014 Kia SEDONA; 2009-2012 Ram 1500; 2010-2012 Ram 2500; 2010-2012 Ram 3500; 2011-2012 Ram 4500; 2011-2012 Ram 5500; 2012-2018 Toyota AVALON; 2013-2018 Toyota AVALON HYBRID; 2011-2019 Toyota COROLLA; 2011-2013 Toyota COROLLA MATRIX; 2012-2017 Toyota SEQUOIA; 2012-2019 Toyota TACOMA; and 2012- 2017 Toyota TUNDRA.

30. "Defective ACUs" refers to all airbag control units designed and manufactured by ZF-TRW that include ASICs that are susceptible to electrical overstress (the "ASIC Defect"), including all ZF-TRW ACUs that were installed in the Class Vehicles.

31. "Vehicle Manufacturer Defendants" refers collectively to Hyundai, Kia, Honda, and Toyota. At all times relevant to this action, the Vehicle Manufacturer Defendants and/or their agents manufactured, distributed, sold, leased, and warranted Class Vehicles throughout the United States.

32. "Hyundai/Kia Defendants" refers collectively to Hyundai Motor America, Inc. ("HMA") and Kia Motors America, Inc. ("KMA").

33. "HKMC" refers to Hyundai Kia Motors Corporation, a South Korean multinational conglomerate headquartered in Seoul, South Korea.

34. "MOBIS" refers to MOBIS Co. Ltd., a foreign limited liability company under the laws of South Korea that is a parts supplier for the Hyundai and Kia family of companies.

35. HMA and KMA worked with ZF-TRW, the manufacturer and supplier of the defective airbag control system at issue here, to hide the true nature of these important safety systems and the vehicles that contained them from consumers for years. This allowed HMA and KMA to continue selling defective vehicles to unsuspecting consumers while avoiding the costs of recalls

and replacements for years, as well as lost sales due to consumer distrust in the safety of HMA and KMA products. ZF-TRW participated in this concealment throughout and continued to profit by providing defective parts.

**B. The Airbag Control Unit Defect and Investigation**

36. This lawsuit concerns the ACUs designed and manufactured by ZF-TRW. These ACUs contain a critical component known as the application-specific integrated circuit ("ASIC"). When the ASIC is working correctly, the ACU will detect the severity of a crash, engage the seatbelt pretensioners, and deploy the airbags, if necessary.

37. The ACU must deploy the airbags and seatbelt pretensioners rapidly and successfully during a collisions. If they do not, then they are of no value. Class Vehicles equipped with ACUs manufactured by ZF-TRW may fail to deploy during a collision, due to electrical overstress (EOS).[1]

38. EOS failure happens when the ASIC experiences a voltage or current beyond its specified limit.[2] Basically, a crash event produces electrical signals which are sent to the ACU via wiring that runs through the ASIC. Due to the nature of the defect, the electrical signals overload the ASIC, which prevents the airbags and seatbelts pretensioner from deploying.[3] This defect decreases the value of the vehicles purchased or leased by the class members because it increases the likelihood of injury or death during a collision.

39. Hyundai and Kia started their own investigations into their vehicles equipped with ZF-TRW ACUs in 2011 and 2015. However, neither notified NHTSA about the potentially deadly defect until late 2015, and even after notifying NHTSA, Hyundai and Kia failed to notify owners and lessees.

40. In 2016, FCA issued a recall of over 1.4 million vehicles due to the Defective ACUs.

41. NHTSA opened an investigation into the ZF-TRW ACU parts installed in HMA and

---

[1] NHTSA, ODI Resume, April 19, 2019, Investigation: EA 19-001, https://static.nhtsa.gov/odi/inv/2019/INOA-EA19001-2536.PDF.

[2] Matthew Schwartz, *Government Expands Airbag Investigation To Include More Than 12 Million Vehicles*, NPR (Apr. 24, 2019), https://www.npr.org/2019/04/24/716614132/government-expands-air-bag-investigation-to-include-more-than-12-million-vehicle. (last visited June 25, 2019).

[3] NHTSA, ODI Resume, *supra* note 1.

1    KMA vehicles in March of 2017, in order to determine why the airbags were not inflating during

2    crashes.[4]

3        42. HMA and KMA did issue safety recalls in 2018 for select vehicles equipped with ZF-

4    TRW airbag systems in which the ACU was susceptible to EOS during certain frontal crash

5    events. However, those recalls do not go far enough to address the severity of the issue because

6    they only included a small number of the Class Vehicles affected by the defect.

7        43. On February 27, 2018, HMA recalled 154,753 vehicles potentially affected by the defect.

8    The Hyundai vehicles covered by that recall were model year 2011 Hyundai Sonatas

9    manufactured between December 11, 2009 and September 29, 2010.[5] On April 18, 2018, Hyundai

10   expanded its recall to include an additional 425,305 model year 2012-2013 Sonatas and model

11   year 2011-2012 Sonata Hybrid vehicles.[6]

12       44. On June 1, 2018, KMA recalled 507,587 potentially affected vehicles, which covered

13   model year 2010-2013 Kia Fortes produced from February 24, 2009 thru August 31, 2012; model

14   year 2010-2013 Kia Forte Koups produced from June 5, 2009 thru August 31, 2012; model year

15   2011-2013 Kia Optimas produced from August 12, 2010 thru August 31, 2012; model year 2011-

16   2012 Kia Optima Hybrids produced from February 15, 2011 thru August 31, 2012; model year

17   2011-2012 Kia Sedonas produced from March 3, 2010 thru August 14, 2012.[7]

18       45. All of the recalled KMA vehicles were equipped with ZF-TRW ACUs that contained

19   ASICs susceptible to EOS during crash events. The NHTSA's Safety Recall Report describe the

20   defect as follows:

21           "If the ASIC becomes damaged, the front airbags and seatbelt pretensioners may

22           not deploy in certain frontal crashes where deployment may be necessary,

23           thereby increasing the risk of injury."

---

[4] Tom Krisher, *US expands probes into airbag failures to 12.3 million vehicles*, The Associated Press (Apr. 23, 2019), https://www.apnews.com/0a9f1191d3624327a04865c590825229. (last visited June 25, 2019).

[5] Part 573 Safety Recall Report for NHTSA Recall No. 18V-137 (Feb. 27, 2018), https://static.nhtsa.gov/odi/rcl/2018/RCLRPT-18V137-5161.PDF.

[6] 2013 *Hyundai Sonata, Airbags/Seat Belt Pretensioners may be Disabled Recall*, NHTSA (Feb. 27, 2018), https://www.nhtsa.gov/vehicle/2013/HYUNDAI/SONATA#recalls.

[7] Part 573 Safety Recall Report for NHTSA Recall No. 18V-363 (June 1, 2018), https://static.nhtsa.gov/odi/rcl/2018/RCLRPT-18V363-7061.PDF.

46. That report described the cause of the defect as inadequate circuit protection.[8] Four deaths and six injuries led to the investigations into the ACU system defects in these vehicles and the recalls.[9]

47. On April 19, 2019, the NHTSA's Office of Defects Investigation announced its expanded investigation into ACUs manufactured by ZF-TRW. ODI now estimates that the total population of vehicles affected is more than 12.3 million.[10]

**C. Defendants Knew, or Should Have Known, about the ACU Defect**

48. As early as August 2011, ZF-TRW, Hyundai, and Kia, knew of an issue with the ACU components. At that time, MOBIS requested ZF-TRW's help with analyzing the ACU from a Kia Forte, which was involved in a collision in China. The Kia Forte was furnished with a ZF-TRW airbag that failed to deploy during the collision. ZF-TRW analyzed the incident and noted damage on the ASIC consistent with EOS. HKMC later communicated that the incident was a commanded non-deployment, meaning the ACU received the signal from the sensor, but instructed the airbag not to deploy.[11]

49. In February 2012, HMA solicited ZF-TRW's help with analyzing an airbag non-deployment incident involving a 2011 Hyundai Sonata. By June 2012, further inspection of the vehicle's ACU revealed EOS inside the unit's ASIC.[12]

50. In March 2012, MOBIS requested ZF-TRW's help with analyzing an airbag non-deployment event in Egypt. In its assessment, ZF-TRW observed damage on the ASIC consistent with EOS. Like the August 2011 collision in China, HKMC subsequently communicated that this incident was a commanded non-deployment.[13]

51. On May 17, 2012, ZF-TRW contacts HKMC and MOBIS regarding an investigation of

---

[8] *Id.*

[9] Tom Krisher, *US probes 4 deaths in Hyundai-Kia cars when airbags failed*, The Associated Press (Mar. 17, 2018), https://apnews.com/3ef0e4356d3b4478aaf4c5a66a363fb0. (last visited June 24, 2019).

[10] NHTSA, ODI Resume, *supra* note 1.

[11] TRW Automotive Inc. (ZF) Chronology, NHTSA (last updated June 13, 2018), https://static.nhtsa.gov/odi/rcl/2018/RMISC-18E043-5831.pdf. [hereinafter ZF Chronology].

[12] 573 Defect Information Report for Recall 174 Attachment A, NHTSA (last updated Apr. 18, 2018) https://static.nhtsa.gov/odi/rcl/2018/RMISC-18V137-8310.pdf. [hereinafter Hyundai Chronology].

[13] ZF Chronology, *supra* note 11.

1    observed EOS in field events.[14]

2        52. In March 2014, KMA was named as a Defendant in a lawsuit, which alleged the frontal

3    airbags in a 2012 Kia Forte had failed to deploy. This non-deployment was reported to NHTSA.

4    Later that year, KMA received and responded to an inquiry from NHTSA regarding the

5    incident.[15]

6        53. On February 15, 2015, HMA requested ZF-TRW's help with reviewing data collected

7    from the ACU of a Hyundai Sonata. The airbags purportedly did not deploy during a collision.

8        54. On May 6, 2015, KMA requested ZF-TRW's help with reviewing data collected from the

9    ACU of a Kia Forte. The airbags purportedly did not deploy during a collision.

10       55. In December 2015, KMA requested ZF-TRW's help with analyzing data collected from

11   the ACUs of four additional Kia Fortes, all of which experienced airbag non-deployments during

12   their respective collisions. ZF-TRW observed damage to the ASIC components consistent with

13   EOS.[16]

14       56. Between March and June 2015, KMA attempted to collect information from an ACU, but

15   were unable to do so. KMA then requested ZF-TRW's help to obtain the data, but ZF-TRW was

16   also unable to successfully collect the data. An engineering consultant concluded that the front

17   impact sensors ("FIS") were compromised before the airbag signal could be transmitted.

18       57. At some point during the summer of 2015, ZF-TRW advised KMA that NHTSA was

19   investigating airbag non-deployment issues in a wide range of vehicle models equipped with ZF-

20   TRW's ACUs.[17]

21       58. On February 5, 2016, ZF-TRW met with NHTSA to discuss the investigation into its

22   ACUs and incidents involving non-deployment of airbags with observable EOS.[18] That same day,

23   ZF-TRW advised KMA that it had provided information to NHTSA regarding all manufacturers

24   that incorporated the affected ACU into their vehicles. According to NHTSA, ZF-TRW's

25   

26   [14] *Id*.

27   [15] Forte, Forte Koup, Optima, Optima Hybrid, Sedona ACU Chronology, NHTSA (last updated May 28, 2018),
     https://static.nhtsa.gov/odi/rcl/2018/RMISC-18V363-5570.pdf. [hereinafter Kia Chronology].

     [16] ZF Chronology, *supra* note 11.

     [17] Kia Chronology, *super* note 15.

28   [18] ZF Chronology, *supra* note 11.

1   presentation included unverified and incorrect information regarding Kia vehicles.[19]

2      59. On February 25, 2016, ZF-TRW met with HKMC and MOBIS in South Korea to discuss

3   its meeting with NHTSA and "the continued investigation of nondeployments with observed

4   EOS."[20]

5      60. On April 25, 2016, HMA solicited ZF-TRW's help with analyzing data downloaded from

6   the ACU of a Hyundai Sonata whose airbags purportedly failed to deploy during a collision. ZF-

7   TRW "observes damage on the ASIC that is consistent with EOS."[21] HKMC subsequently

8   communicates that this incident was a commanded non-deployment.[22]

9      61. Between May 24-26, 2016, executives of ZF-TRW, HKMC, and MOBIS held another in-

10  person meeting in Korea to "discuss the ongoing EOS analysis and investigation."[23]

11     62. On July 19, 2016, ZF-TRW attended "another in-person meeting with NHTSA to provide

12  an update on the ongoing EOS investigation."[24]

13     63. On July 29, 2016, ZF-TRW, HKMC, and MOBIS held another in-person meeting in

14  Korea to "discuss the NHTSA meeting and continued investigation of nondeployments with

15  observed EOS on the ACU."[25]

16     64. Between July and August of 2016, ZF-TRW and KMA exchanged several

17  communications regarding the discussions ZF-TRW had with NHTSA. During that period, ZF-

18  TRW informed KMA that FCA had decided to recall certain models, and that ZF-TRW disagreed

19  with FCA's decision to issue a recall. ZF-TRW advised KMA that its discussions with NHTSA

20  and FCA did not require a recall by Kia.

21     65. On Information and belief, Defendants participated in communications meant to slow

22  down the NHTSA investigation and obfuscate the dangers posed by the ACUs. On information

23  and belief, Defendants intentionally and repeatedly misstated the reason for airbag non-

24

25  [19] Kia Chronology, *supra* note 15.
    [20] ZF Chronology, *supra* note 11.
26  [21] *Id.*
    [22] *Id.*
27  [23] *Id.*
    [24] *Id.*
28  [25] *Id.*

1   deployments in order to hide the apparent defect.

2       66. Between July and November 2016, HMA received two reports of collisions involving

3   Hyundai Sonata vehicles in which airbag non-deployments were observed. HMA enlisted the

4   assistance ZF-TRW to investigate the vehicles' ACUs. "ZF TRW confirmed the recovered ACU

5   from one of the vehicles as being damaged internally potentially by EOS."[26]

6       67. From November 3, 2016 to August 22, 2017, HMA, and MOBIS requested ZF-TRW's

7   help analyzing and inspecting five different airbag non-deployment events.[27]

8       68. Between August 24-25, 2017, HMA and KMA requested ZF-TRW's help with analyzing

9   data pulled from the ACUs of three different vehicles that experienced airbag non-deployment

10  during collisions. ZF-TRW observed damage on the ASICs consistent with EOS. Subsequently,

11  HKMC communicated its assessment that all three incidents were commanded non-

12  deployments.[28]

13      69. Between January and February 2018, HMA and KMA informed ZF-TRW that NHTSA

14  was requesting information about incidents involving defective ACUs.[29]

15      70. On February 21, 2018, HMA and ZF-TRW met to discuss their investigation surrounding

16  the non-deployment issue and the similarities to the 16V-668 recall campaign, where EOS

17  appeared to be a main cause of airbag non-deployment in Fiat Chrysler vehicles.[30]

18      71. On February 27, 2018, HMA voluntarily recalled more than 154,000 2011 model year

19  Hyundai Sonatas due to the ACU defect.[31]

20      72. The NHTSA recall report describes the defect as follows:

21  "The subject vehicles are equipped with an Airbag Control Unit ("ACU") which detects a
    crash signal and commands deployment of the airbags and seatbelt pretensioner. In some
22  airbag non-deployment allegations, electrical overstress ("EOS") was observed on an
    Application Specific Integrated Circuit ("ASIC") inside the ACU."[32]

23

24

25  [26] Hyundai Chronology, *supra* note 12.
    [27] ZF Chronology, *supra* note 11.
26  [28] *Id.*
    [29] *Id.*
27  [30] Hyundai Chronology, *supra* note 12.
    [31] ZF Chronology, *supra* note 11.
28  [32] Part 573 Safety Recall Report for NHTSA No. 18V-137, *supra* note 5.

73.  Between March 19, 2018 and March 28, 2018, HMA conducted seven crash tests developed by its internal Research and Development team and a third-party engineering firm. The team was able to replicate EOS damage to the ACU in three of the seven test crashes, with at least one of the confirmed EOS events resulting in airbag non-deployment.[33]

74. On June 1, 2018, KMA issued its first recall for 507,587 vehicles related to the ACU defect. This recall was for 2010-2013 MY Kia Fortes, 2011-2012 MY Kia Optima Hybrids, 2010-2013 MY Kia Forte Koups, 2011-2013 MY Kia Optimas, and 2011-2012 MY Kia Sedonas.[34]

75. Even after these initial recalls, Defendants failed to notify consumers that the defective airbags and seatbelt pretensioners could be hiding in additional vehicles. On April 19, 2019, NHTSA announced its expanded investigation of the ACUs manufactured by ZF-TRW. NHTSA estimates the number of affected vehicles to be 12.3 million vehicles, which includes vehicles manufactured by HMA, KMA, American Honda Motor Co., and Toyota Motor Corporation.[35]

76. All Defendants were aware of the defects in their products. While HMA and KMA eventually recalled some vehicles, those recalls did not go far enough to adequately address the ACU defect. Honda and Toyota have concealed the defect from their customers by refusing to issue a recall, despite knowing that the same ZF-TRW ACU defect is present in their vehicles.

77. Defendants have worked together to intentionally concealed the ACU defect from the public for as long as possible, and misrepresented the seriousness of the defect to their customers.

**D.  Defendants Concealed the Defect**

78. Defendants misled consumers about the safety of their vehicles in advertisements and promotional materials. A reasonable consumer purchases a vehicle assuming that the airbags and seatbelt pretensioners will deploy appropriately in the event of a collision, as advertised.

79. Despite knowing of the ZF-TRW ACU defect for many years, Defendants advertised their vehicles as safe and reliable.

80. For examples, Hyundai advertises that the 2019 Sonata is equipped with standard safety

---

[33] Hyundai Chronology, *supra* note 12.
[34] Part 573 Safety Recall Report for NHTSA No. 18V-137, *supra* note 7.
[35] NHTSA, ODI Resume, *supra* note 1.

features including dual front airbags and front seatbelt pretensioners.[36] Kia advertises that the 2019 Optima is equipped with standard safety features including dual front advanced airbags and front seatbelt pretensioners.[37] Honda, through its Acura website, advertises its 2019 RLX as having front airbags and front seat belts with automatic tensioning.[38] Toyota advertises that the 2019 Tacoma is equipped with standard safety features including driver and front passenger airbags.[39]

81. Defendants advertised and promised functional safety features in their vehicles and airbags, and consumers paid a price to receive those features. If consumers had known the truth about the Class Vehicles, then they would have reasonably made different purchasing choices.

## V.    CLASS ACTION ALLEGATIONS

### A.  Class Definitions

82. Pursuant to Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of themselves, the Nationwide Class, and State Classes, defined as:

**Nationwide Class:**

All persons or entities in the United States (including its territories and the District of Columbia) who purchased or leased a Class Vehicle.

83. In addition to the Nationwide class, and pursuant to Federal Rules of Civil Procedure Rule 23(c)(5), Plaintiffs seek to represent the following State Classes as well as any subclasses or issue classes as Plaintiffs may propose and/or the Court may designate at the time of class certification:

**California State Class:**

All persons or entities in the state of California who purchased or leased a Class Vehicle.

**Iowa State Class:**

All persons or entities in the state of Iowa who purchased or leased a Class Vehicle.

---

[36] 2019 Hyundai Sonata, Hyundai Motor America, https://www.hyundaiusa.com/sonata/specifications.aspx?%20specs. (last visited July 15, 2019).

[37] *2019 Kia Optima*, Kia Motors America, Inc., https://www.kia.com/us/en/vehicle/optima/2019/features. (last visited July 15, 2019).

[38] *2019 Acura RLX*, https://www.acura.com/rlx/pricing-and-specs (last visited July 1, 2019).

[39] *2019 Toyota Tacoma*, https://www.toyota.com/tacoma/features/mpg/7594/7544/7582. (last visited July 1, 2019).

**Kansas State Class:**

All persons or entities in the state of Kansas who purchased or leased a Class Vehicle.

**Maryland State Class:**

All persons or entities in the state of Maryland who purchased or leased a Class Vehicle.

**New York State Class:**

All persons or entities in the state of New York who purchased or leased a Class Vehicle.

**Washington State Class:**

All persons or entities in the state of Washington who purchased or leased a Class Vehicle.

84. Excluded from the Classes are individuals who have personal injury claims resulting from the conduct and defects alleged herein; Defendants and their subsidiaries, affiliates, officers, and employees; Class Counsel and their employees; the Judge to whom this case is assigned and his or her immediate family; associated court staff assigned to this case; and all persons who timely elect to exclude themselves from the Classes.

85. Plaintiffs reserve the right to modify the definition of the Nationwide and/or any State Class prior to class certification.

86. Certification of Plaintiffs' claims for classwide treatment is appropriate because Plaintiffs can prove the elements of their claims regarding liability and entitlement to damages on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim. This action has been brought and may be properly maintained on behalf of the Nationwide Class and/or State Classes proposed herein under Federal Rule of Civil Procedure 23.

**B. Class Certification Requirements**

87. **Numerosity: Rule 23(a)(1)**: There are millions of Class Vehicles Nationwide. Individual joinder of all Class members is impracticable. The precise number of Class members may be ascertained from Defendants' records and vehicle registration records. Plaintiffs anticipate providing appropriate notice of this action to the Class members by Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, social media, and published notice.

88. **Commonality and Predominance: Rules 23(a)(2) and 23(b)(3):** This action involves significant common questions of law and fact, which predominate over any questions affecting individual Class members. These include, but are not limited to, the following:

      a.   Whether Defendant ZF-TRW designed, manufactured, and distributed defective ACU parts for installation in Class Vehicles;

      b.   Whether the Class Vehicles have the defect alleged herein; and whether that defect constitutes a safety defect;

      c.   Whether Defendants knew or should have known that the Class Vehicles contained defects as alleged herein;

      d.   Whether Defendants had a duty to disclose the defective nature of the Class Vehicles to Plaintiffs and Class members;

      e.   Whether Defendants engaged in unfair, deceptive, unlawful and/or fraudulent acts or practices, in trade or commerce, by failing to disclose that the class vehicles were designed, manufactured, and sold with defective airbag components;

      f.   Whether Defendants' statements, concealments, and omissions regarding the class vehicles, were material, in that a reasonable consumer could consider them important in purchasing, selling, maintaining, or operating such vehicles;

      g.   Whether Plaintiffs and the other Class members overpaid for their Class Vehicles as a result of the defects and Defendants' concealment;

      h.   Whether Plaintiffs suffered out-of-pocket losses as a result of the defects alleged herein and whether they will suffer out-of-pocket losses as a result of any proposed recall;

      i.   Whether Defendants' concealment of the true nature of the Class Vehicles would have induced a reasonable consumer to act to his or her detriment by purchasing and/or leasing the Class Vehicles;

      j.   Whether Defendants' conduct tolls any or all applicable limitations period

1               by acts of fraudulent concealment, application of the discovery rule, or

2               equitable estoppel;

3         k.   Whether Plaintiffs and the other Class members are entitled to damages and

4               other monetary relief and, if so, in what amount; and

5         l.   Whether Defendants conspired with others to violate RICO.

6     89. **Typicality: Rule 23(a)(3)**: Plaintiffs' claims are typical of the claims of the Class

7 members whom they seek to represent under Federal Rule of Civil Procedure 23(a)(3), because

8 Plaintiffs and each Class member purchased a Class Vehicle and were similarly injured through

9 Defendants' wrongful conduct as described above. Plaintiffs and the other Class members

10 suffered damages as a direct proximate result of the same wrongful practices by Defendants.

11 Plaintiffs' claims arise from the same practices and courses of conduct that give rise to the claims

12 of the other Class members. Plaintiffs' claims are based upon the same legal theories as the

13 claims of the other Class members.

14     90. **Adequacy: Rule 23(a)(4)**: Plaintiffs will fairly and adequately represent and protect the

15 interests of the Class members as required by Federal Rule of Civil Procedure 23(a)(4). Plaintiffs

16 have retained counsel competent and experienced in complex class action litigation, including

17 vehicle defect litigation and other consumer protection litigation. Plaintiffs intend to prosecute

18 this action vigorously. Neither Plaintiffs nor their counsel have interests that conflict with the

19 interests of the other Class members. Therefore, the interests of the Class members will be fairly

20 and adequately protected.

21     91. **Declaratory and Injunctive Relief: Rule 23(b)(2).** Defendants have acted or refused to

22 act on grounds generally applicable to Plaintiffs and the other members of the Class, thereby

23 making appropriate final injunctive relief and declaratory relief, as described below, with respect

24 to the Class as a whole.

25     92. **Superiority: Rule 23(b)(3)**: A class action is superior to any other available means for the

26 fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be

27 encountered in the management of this class action. The damages or other financial detriment

28 suffered by Plaintiffs and the other Class members are relatively small compared to the burden

and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for members of the Class to individually seek redress for Defendants' wrongful conduct.

93. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## VI. EQUITABLE TOLLING

### A. Discovery Rule

94. The tolling doctrine was made for cases of concealment like this one. Plaintiffs and Class members did not discover, and could not have discovered through the exercise of reasonable diligence, that Defendants had actively conspired to conceal the true nature of the defect alleged herein. Even if a Class member had received notification of a prior recall, or experienced an airbag non-deployment during a collision, there would be no way for that Class member to discover the Defendants' efforts to conceal the defect. Therefore, all applicable statutes of limitation have been tolled by operation of the discovery rule.

### B. Fraudulent Concealment

95. Any applicable statute of limitations has been tolled by Defendants' knowledge, active concealment, and denial of the facts alleged herein. All Defendants have known, or should have known, of the defect since at least 2016, which is when FCA issued its first recall, if not considerably earlier. ZF-TRW, HMA, and KMA knew of the defect since at least August 2011. However, KMA did not disclose the defect to safety regulators until 2018. To this day, ZF-TRW, Honda, and Toyota still refuse to acknowledge the Defect. Therefore, all applicable statutes of limitation have been tolled as result of Defendants' knowing, ongoing, and active concealment of the defect alleged herein.

### C. Estoppel

96. Defendants were and are under a continuous duty to disclose to Plaintiffs and Class

1   members the true character, quality, and nature of the Class Vehicles. Instead, they actively

2   concealed the true character, quality, and nature of the Class vehicles. Plaintiffs and Class

3   members reasonably relied on Defendants' misrepresentations and omissions of these facts, and

4   Defendants are therefore estopped from relying on any statute of limitations in defense of this

5   action.

6                              **VII. CLAIMS FOR RELIEF**

7       **A.  Claims Asserted on Behalf of the Nationwide Class**

8                                    **COUNT I**
        **RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO")**
9                          **(Violation of 18 U.S.C. § 1962(c))**
                   **(Against ZF-TRW and The Hyundai/Kia Defendants)**
10

11      97. Plaintiffs re-allege and incorporate the allegations in the preceding paragraphs as though

12   fully set forth herein.

13      98. Plaintiffs bring this claim on behalf of themselves, and the members of the proposed

14   Nationwide Class, against ZF-TRW and the Hyundai/Kia Defendants with regard to the Defective

15   ACUs that the Defendants manufactured, sold, or misrepresented a safe.

16      99. ZF-TRW, the Hyundai/Kia Defendants, and MOBIS are all "persons" under 18 U.S.C. §

17   1961(3).

18      100.     Plaintiffs and Class members are "persons[s] injured in his or her business or

19   property" by reason of the Hyundai/Kia Defendants' and ZF-TRW's violation of RICO within the

20   meaning of 18 U.S.C. § 1964(c).

21      101.     Since 2011, ZF-TRW and the Hyundai/Kia Defendants shared information about

22   airbag non-deployments, jointly and secretly; investigated the possible causes of those failed

23   deployments; delayed and/or prevented the release of inculpatory information; misled regulatory

24   authorities; and maintained a consistent public posture as to the scope of vehicles affected by the

25   Defective ACUs, and the safety risks posed by the defect.

26      102.     The Hyundai/Kia Defendants' close cooperation with ZF-TRW on issues

27   surrounding the Defective ACUs, and joint participation in predicate acts described below,

28

evidence not only the formation of a common purpose to conduct the ACU RICO Enterprise through a pattern of racketeering activity, but also a conspiracy to participate in a RICO enterprise by conducting the affairs of such an enterprise through a pattern of racketeering activity.

### The ACU RICO Enterprise

103.     The following persons, and others currently unknown, are or have been members of, and constitute an "association-in-fact enterprise," within the meaning of RICO, and will be referred to herein collectively as the ACU RICO Enterprise:

      a.  <u>ZF-TRW</u>, who, designed and manufactured the Defective ACUs and provided services to the Hyundai/Kia Defendants, and MOBIS in post-crash investigations. ZF-TRW knew about the Defective ACUs, and they concealed and/or misrepresented the scope and nature of the defect to the public and regulators for close to a decade and still refuse to entirely acknowledge it.

      b.  <u>MOBIS</u>, who, with ZF-TRW's help, knowingly supplied millions of Defective ACUs and concealed and/or misrepresented the scope and nature of the defect from the public and regulators for close to a decade and still refuse to entirely acknowledge it.

      c.  <u>The Hyundai/Kia Defendants</u>, who designed, manufactured, and sold millions of vehicles equipped with the Defective ACUs that it knew, or were reckless in not knowing, contained the defect, concealed and/or misrepresented the scope and nature of the defect to the public and regulators since August of 2011, while falsely and inaccurately representing that their vehicles were safe, thereby deceiving Plaintiffs and Class members.

104.     The ACU RICO Enterprise, which engaged in, and whose activities affected interstate and foreign commerce, includes individuals and corporate entities associated in fact within the meaning of 18 U.S.C. § 1961(4) and consists of "persons" associated together for the common purpose. The ACU RICO Enterprise had an ongoing organization with an ascertainable structure and functioned as a continuing unit with separate roles and responsibilities.

105.     At all relevant times, ZF-TRW and the Hyundai/Kia Defendants operated, controlled, or managed the ACU RICO Enterprise through a variety of actions. The Hyundai/Kia Defendants' participation in the ACU RICO Enterprise was necessary for the successful operation of its scheme to defraud, because the Hyundai/Kia Defendants manufactured, marketed, and sold Class Vehicles with the Defective ACUs; concealed the nature and scope of the defect; and profited from such concealment. ZF-TRW's participation in the ACU RICO Enterprise was necessary for the successful operation of the scheme to defraud, because ZF-TRW designed and provided support related to analysis of the ACU data. MOBIS's participation in the scheme was necessary for the successful operation of the enterprise, because MOBIS supplied the Defective ACUs that were installed in the Class Vehicles.

106.     Members of the ACU RICO Enterprise all served a common purpose: to maximize the revenue and profitability of its members by delaying the recall of the Defective ACUs and continuing to unlawfully sell unreasonably dangerous vehicles containing Defective ACUs.

107.     Members of the ACU RICO Enterprise pursued their common purpose by engaging in a pattern of racketeering activity that included a common fraudulent scheme to increase sales by omitting information from the public regarding the Defective ACUs.

108.     Members of the ACU RICO Enterprise benefited from the common purpose: the Hyundai/Kia Defendants sold or leased more Class Vehicles and receive more for those vehicles than they would have otherwise, had the scope and nature of the Defective ACUs not been concealed; and ZF-TRW and MOBIS sold more Defective ACUs to the Hyundai/Kia Defendants than they would have otherwise, had the scope and nature of the defect not been concealed.

**Pattern of Racketeering Activity**

109.     ZF-TRW, the Hyundai/Kia Defendants, and MOBIS conducted and participated in the conduct of the affairs of the ACU RICO Enterprise through a pattern of racketeering activity that began in August of 2011, and continues to this day, consisting of numerous and repeated violations of the federal mail and wire fraud statutes, which prohibit the use of any interstate or foreign mail or wire facility for the purpose of executing a scheme to defraud, in violation of 18 U.S.C. §§ 1341 and 1343.

110.    For ZF-TRW and the Hyundai/Kia Defendants, the purpose of the scheme to defraud was to conceal the scope and nature of the Defective ACUs in the United States in order to avoid incurring the expenses associated with repairing the Defective ACUs in the vehicles that the Hyundai/Kia Defendants were obligated to recall. By concealing the scope and nature of the Defective ACUs, ZF-TRW and the Hyundai/Kia Defendants also maintained and boosted consumer confidence in the Hyundai and Kia brands and avoided remediation costs and negative publicity, all of which furthered the scheme to defraud and helped ZF-TRW, the Hyundai/Kia Defendants, and MOBIS sell more vehicles and airbags than they otherwise would have, and to earn a much higher profit on those sales.

111.    As detailed in the general factual allegations, ZF-TRW and the Hyundai/Kia Defendants were well aware of the risks of an EOS event damaging the ASIC during a crash event but intentionally subjected Plaintiffs and Class members to those risks, or consciously disregarded those risks, in order to maximize their profits. Even after ZF-TRW and the Hyundai/Kia Defendants were aware of multiple airbag non-deployments in ZF-TRW ACUs installed in vehicles for which the Hyundai/Kia Defendants were responsible to recall, ZF-TRW and the Hyundai/Kia Defendants continued to conceal the nature and scope of the Defective ACUs from regulators and the public. This enabled ZF-TRW and the Hyundai/Kia Defendants to escape investigation and the costs associated with recalls.

112.    To further the scheme to defraud, ZF-TRW, the Hyundai/Kia Defendants, and MOBIS conspired to, and did repeatedly, misrepresent and conceal the nature and scope of the Defective ACUs. As late as the end of 2017, ZF-TRW and the Hyundai/Kia Defendants refused to publicly acknowledge that the uniform defect existed in all vehicles with ACU components, when in fact Defendants knew that the defect is manifest in every ZF-TRW ACU.

113.    To further the scheme to defraud, the Hyundai/Kia Defendants promoted the safety, reliability, and quality of its vehicles, while at the same time concealing the nature and scope of the Defective ACUs.

114.    To carry out or attempt to carry out the scheme to defraud ZF-TRW and the Hyundai/Kia Defendants conducted or participated in the conduct of the affairs of the ACU RICO

Enterprise through the following pattern of racketeering activity that employed the use of the mail and wire facilities, in violation of 18 U.S.C. § 1341 (mail fraud) and § 1343 (wire fraud):

    a.  ZF-TRW and the Hyundai/Kia Defendants devised and furthered the scheme to defraud by use of the mail, telephone, and Internet and transmitted or caused to be transmitted, by means of mail and wire communication traveling in interstate or foreign commerce, writing(s) and/or signal(s), including the Hyundai/Kia Defendants' websites, communications with the NHTSA, statements to the press, and communications with other members of the ACU RICO Enterprise, as well as advertisements and other communications to their customers, including Plaintiffs and Class members; and

    b.  ZF-TRW and the Hyundai/Kia Defendants utilized the interstate and international mail the wires for the purpose of obtaining money or property, by means of the omissions, false pretense, and misrepresentations described herein.

115.    ZF-TRW's and the Hyundai/Kia Defendants' pattern of racketeering activity in violation of the mail and wire fraud statutes included, but was not limited to, the following:

    a.  From August of 2011 through at least 2017, ZF-TRW and the Hyundai/Kia Defendants repeatedly transmitted, or cause to be transmitted, by means of the mail and wire facilities traveling in interstate or foreign commerce, between the Hyundai/Kia Defendants' facilities in California and ZF-TRW's facilities in Michigan, countless shipments of, and payments for, millions of ACUs. These regular, repeated shipments facilitated and furthered the scheme to defraud.

    b.  Around August of 2011, ZF-TRW and the Hyundai/Kia Defendants transmitted or caused to be transmitted, by means of mail and wire communication traveling in interstate or foreign commerce, among the Hyundai/Kia Defendants in California and ZF-TRW in Michigan, communications concerning an airbag non-deployment that occurred during a crash in China. ZF-TRW communicated

that the damage to the ASIC was caused by EOS, but the Hyundai/Kia Defendants represented that incident was a "commanded nondeployment" and thus was not the result of a defect. The Hyundai/Kia Defendants failed to timely disclose these facts to the public and regulators in order to conceal the scope and nature of the Defective ACUs and to promote the purported safety of the Hyundai/Kia Defendants vehicles.

c.   In March of 2012, ZF-TRW and the Hyundai/Kia Defendants transmitted or caused to be transmitted, by means of mail and wire communication traveling in interstate or foreign commerce, among the Hyundai/Kia Defendants in California and ZF-TRW in Michigan, communications concerning an airbag non-deployment that occurred during a crash in Egypt. ZF-TRW communicated that the damage to the ASIC was caused by EOS, but the Hyundai/Kia Defendants represented that incident as a "commanded nondeployment" and thus was not the result of a defect. The Hyundai/Kia Defendants failed to timely disclose these facts to the public and regulators in order to conceal the scope and nature of the Defective ACUs and to promote the purported safety of the Hyundai/Kia Defendants vehicles.

d.   Between December 1-3 of 2011, ZF-TRW and the Hyundai/Kia Defendants transmitted or caused to be transmitted, by means of mail and wire communication traveling in interstate or foreign commerce, among the Hyundai/Kia Defendants in California and ZF-TRW in Michigan, communications concerning an airbag non-deployment that occurred during two vehicle crashes. ZF-TRW communicated that the damage to both ASIC was caused by EOS, but the Hyundai/Kia Defendants represented that one incident was a "commanded nondeployment" and the other was "under investigation." The Hyundai/Kia Defendants failed to timely disclose these facts to the public and regulators in order to conceal the scope and nature of the Defective ACUs and to promote the purported safety of the Hyundai/Kia Defendants vehicles.

1         e.   On April 25, 2016, ZF-TRW and the Hyundai/Kia Defendants transmitted or

2             caused to be transmitted, by means of mail and wire communication traveling in

3             interstate or foreign commerce, among the Hyundai/Kia Defendants in

4             California and ZF-TRW in Michigan, communications concerning an airbag

5             non-deployment that occurred during a crash. ZF-TRW communicated that the

6             damage to the ASIC was caused by EOS, but the Hyundai/Kia Defendants

7             represented that incident was a "commanded nondeployment" and thus was not

8             the result of a defect. The Hyundai/Kia Defendants failed to timely disclose

9             these facts to the public and regulators in order to conceal the scope and nature

10           of the Defective ACUs and to promote the purported safety of the Hyundai/Kia

11           Defendants vehicles.

12        f.   Between and around January and July 2016, ZF-TRW and the Hyundai/Kia

13           Defendants caused to be transmitted, by means of mail and wire communication

14           traveling in interstate or foreign commerce, from the Hyundai/Kia Defendants

15           in California and ZF-TRW in Michigan to the offices of NHTSA in

16           Washington, D.C., misrepresentations and omissions regarding the Defective

17           ACUs, including that the defect was not present in Hyundai and Kia brand

18           vehicles. ZF-TRW and the Hyundai/Kia Defendants knew that these statements

19           were false and that the defect was present in millions of vehicles, and yet they

20           did nothing to meaningfully notify the appropriate regulators or notify the Class.

21        g.   Between August 24-25 of 2017, ZF-TRW and the Hyundai/Kia Defendants

22           transmitted or caused to be transmitted, by means of mail and wire

23           communication traveling in interstate or foreign commerce, among the

24           Hyundai/Kia Defendants in California and ZF-TRW in Michigan,

25           communications concerning an airbag non-deployment that occurred during

26           three vehicle crashes. ZF-TRW communicated that the damage to all three

27           ASIC was caused by EOS, but the Hyundai/Kia Defendants represented that all

28           three incidents were "commanded nondeployments." The Hyundai/Kia

1         Defendants failed to timely disclose these facts to the public and regulators in

2         order to conceal the scope and nature of the Defective ACUs and to promote the

3         purported safety of the Hyundai/Kia Defendants vehicles.

4     h.   Between 2011 and the end of 2017, ZF-TRW had knowledge that the

5         Hyundai/Kia Defendants were misrepresenting multiple airbag non-deployment

6         crashes as "commanded nondeployments." However, ZF-TRW acting in its role

7         as part of the ACU RICO Enterprise did not report these misrepresentations to

8         the public or NHTSA. ZF-TRW also failed to report its knowledge of the

9         Defective ACUs to NHTSA and the public until many years after discovering

10         the issues.

11    i.   In April of 2018, the Hyundai/Kia Defendants caused to be transmitted, by

12         means of mail and wire communication traveling in interstate or foreign

13         commerce, from the Hyundai/Kia Defendants' offices in California to the

14         offices of NHTSA in Washington, D.C., misrepresentations and omissions

15         regarding the Defective ACUs, including a chronology of events that omitted

16         numerous airbag non-deployments of which the Hyundai/Kia Defendants were

17         aware, in order to conceal the scope and nature of the Defective ACUs and to

18         promote the purported safety of the Hyundai/Kia Defendants vehicles.

19    j.   On or around August 30, 2018, the Hyundai/Kia Defendants caused to be

20         transmitted, by means of mail and wire communication traveling in interstate or

21         foreign commerce, from the Hyundai/Kia Defendants' offices in California to

22         the offices of NHTSA in Washington, D.C., misrepresentations and omissions

23         regarding the Defective ACUs, including a chronology of events that omitted

24         numerous airbag non-deployments of which the Hyundai/Kia Defendants were

25         aware, in order to conceal the scope and nature of the Defective ACUs and to

26         promote the purported safety of the Hyundai/Kia Defendants vehicles.

27   116.   ZF-TRW and the Hyundai/Kia Defendants' conduct in furtherance of this scheme

28  was intentional. Plaintiffs and Class members were directly harmed as a result of ZF-TRW and

the Hyundai/Kia Defendants' intentional conduct. Plaintiffs, Class members, and federal regulators, among others, relied on ZF-TRW and the Hyundai/Kia Defendants' material misrepresentations and omissions.

117.     As described throughout this complaint, on or after August of 2011, ZF-TRW, the Hyundai/Kia Defendants, and MOBIS conspired to or did engage in a pattern of related and continuous predicate acts. Each predicate act was conducted with the common purpose of defrauding Plaintiffs and other Class members and obtaining significant monies and revenues from them while providing vehicles with Defective ACUs worth significantly less than the purchase price paid. The predicate acts were not isolated events. They had the same or similar results, participants, victims, and methods of commission.

118.     The predicate acts all had the purpose of generating significant revenue and profits for ZF-TRW and the Hyundai/Kia Defendants at the expense of Plaintiffs and Class members. The predicate acts were committed or cause to be committed by ZF-TRW and the Hyundai/Kia Defendants through their participation in the ACU RICO Enterprise and in furtherance of its fraudulent scheme, which involved obtaining Plaintiffs' and Class members' funds and to avoid the expenses associated with remediating the Defective ACUs.

119.     By reason of and as a result of the conduct of ZF-TRW and the Hyundai/Kia Defendants, and in particular, the pattern of racketeering activity described above, Plaintiffs and Class members have been injured in their business and/or property in multiple ways, including but not limited to:

    a.  overpayment for leased or purchased Class Vehicles, due to Plaintiffs belief that they were paying for vehicles with safe airbag systems, but actually received vehicles with the ACU defect, depriving Plaintiffs and Class members the benefit of their bargain; and

    b.  Class Vehicles have diminished in value, thus reducing their resale values.

120.     ZF-TRW and the Hyundai/Kia Defendants' violations of 18 U.S.C. § 1962(c) have directly and proximately caused injuries and damages to Plaintiffs and Class members, and Plaintiffs and Class members are entitled to bring this action for three times their actual damages,

1  as well as injunctive and other equitable relief and costs and reasonable attorneys' fees pursuant

2  to 18 U.S.C. §§ 1964(a) and (c).

3  **COUNT II**

4  **RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO")**
   **(Violation of 18 U.S.C. § 1962(d))**

5  **(Against ZF-TRW and The Hyundai/Kia Defendants)**

6      121.       Plaintiffs bring this claim on behalf of themselves and members of the Nationwide

7  Class.

8      122.       Plaintiffs re-allege and incorporate the allegations set forth above.

9      123.       At all relevant times, ZF-TRW, the Hyundai/Kia Defendants, and MOBIS were

10 associated with the ACU RICO Enterprise and agreed and conspired to violate 18 U.S.C. §

11 1962(c), by agreeing to conduct and participate in, directly and indirectly, in the conduct of the

12 affairs of the ACU RICO Enterprise through a pattern of racketeering activity, in violation of 18

13 U.S.C. § 1962(d). ZF-TRW, the Hyundai/Kia Defendants, and MOBIS also agreed to the

14 objective of the conspiracy or to commit at least two racketeering predicate acts.

15     124.       ZF-TRW, the Hyundai/Kia Defendants, and MOBIS, for the last nine years, have

16 been sharing information about the Defective ACUs, their inability to meet safety specifications,

17 and airbag failures experienced by other automakers; delayed and/or prevented the release of

18 inculpatory information; and maintained a consistent public posture as to the scope of vehicles

19 affected by the Defective ACUs and the safety risks those airbags posed. ZF-TRW, the

20 Hyundai/Kia Defendants, and MOBIS' close cooperation on issues surrounding the Defective

21 ACUs and joint participation in the predicate acts described below is evidence of the conspiracy.

22     125.       ZF-TRW and the Hyundai/Kia Defendants committed, and cause to be committed,

23 a series of overt acts in furtherance of the conspiracy and to affect the objects thereof.

24 Specifically, the following conduct in overt acts demonstrate the ongoing conspiracy between ZF-

25 TRW, the Hyundai/Kia Defendants, and MOBIS:

26           a.   ZF-TRW, the Hyundai/Kia Defendants, and MOBIS continued to encounter

27               non-deployments in the ACUs manufactured by ZF-TRW and installed in

28

1      Hyundai and Kia branded vehicles, but agreed to continue representing their

2      vehicles a safe.

3          b.  ZF-TRW, the Hyundai/Kia Defendants, and MOBIS also agreed to act to

4          prevent any recall of the Defective ACUs. The Hyundai/Kia Defendants did

5          not commence an official recall of their vehicles until 2018. Even then, the

6          Hyundai/Kia Defendants limited the scope of the recall to specific car

7          models and years. The Hyundai/Kia Defendants falsely claimed that the

8          risks caused by the Defective ACUs was not present in any other models not

9          recalled. The Hyundai/Kia Defendants also mischaracterized the defect as

10         occurring in lower frequency than was known by ZF-TRW, the Hyundai/Kia

11         Defendants, and MOBIS. ZF-TRW and MOBIS to the date of filing this

12         complaint have never issued a safety recall of the Defective ACUs.

13     126.    ZF-TRW, the Hyundai/Kia Defendants, and MOBIS agreed to and did conduct and

14  participate in the conduct of the ACU RICO Enterprise's affairs through a pattern of racketeering

15  activity and for the unlawful purpose of defrauding Plaintiffs and Class members, as more fully

16  described above.

17     127.    As a direct and proximate result of ZF-TRW and the Hyundai/Kia Defendants'

18  conspiracy and violation of 18 U.S.C. § 1962(d), Plaintiffs and Class members have been injured

19  in their business and/or property in multiple ways, including but not limited to:

20         a.  overpayment for leased or purchased Class Vehicles, due to Plaintiffs belief that

21         they were paying for vehicles with safe airbag systems, but actually received

22         vehicles with the ACU defect, depriving Plaintiffs and Class members the

23         benefit of their bargain; and

24         b.  Class Vehicles have diminished in value, thus reducing their resale values.

25     128.    Had ZF-TRW and the Hyundai/Kia Defendants been entirely forthcoming with

26  NHTSA and with the public in a timely manner about the vast scope of the Defective ACUs and

27  the grave risks they posed to countless vehicle occupants, as was their duty, Plaintiffs would not

28  have suffered these harms.

129.      ZF-TRW and the Hyundai/Kia Defendants' conspiracy to commit mail fraud and/or wire fraud was reasonably calculated to deceive persons of ordinary prudence and comprehension, and was committed with reckless indifference to the truth if not the outright intent to deceive.

130.      ZF-TRW and the Hyundai/Kia Defendants' conspiracy to violate 18 U.S.C. § 1962(c) was committed with the specific intent to defraud, thereby entitling Plaintiffs to treble damages under 18 U.S.C. § 1964(c).

131.      ZF-TRW and the Hyundai/Kia Defendants' violations of 18 U.S.C. § 1962(d) have directly and proximately caused injuries and damages to Plaintiffs and Class members, and Plaintiffs and Class members are entitled to bring this action for three times their actual damages, as well as injunctive and other equitable relief and costs and reasonable attorneys' fees pursuant to 18 U.S.C. §§ 1964(a) and 1964(c).

**COUNT III**
**BREACH OF THE IMPLIED AND WRITTEN WARRANTY MAGNUSON – MOSS WARRANTY ACT**
**(15 U.S.C. §§ 2301, et seq.)**
**(Against The Vehicle Manufacturer Defendants)**

132.      Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

133.      Plaintiffs bring this Count on behalf of themselves and the Nationwide Class against the Vehicle Manufacturer Defendants.

134.      This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332 (a)-(d).

135.      Plaintiffs and Class members are "consumers" within the meaning of 15 U.S.C. § 2301(3).

136.      Each of the Vehicle Manufacturer Defendants is a "supplier" and "warrantor" within the meaning of 15 U.S.C. § 2301(4)-(5), respectively.

137.      The Class Vehicles are "consumer products" within the meaning of 15 U.S.C. §

2301(1).

138.     15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

139.     The amount in controversy of Plaintiffs' individual claims meets or exceeds $25.00 in value. In addition, the amount in controversy meets or exceeds $50,000 in value (exclusive of interest and costs) on the basis of all claims to be determined in this lawsuit.

140.     The Vehicle Manufacturer Defendants provided Plaintiff and each member of the Class with "written warranties" and "implied warranties," as identified above, which are covered under 15 U.S.C. § 2301(6) and (7), respectively.

141.     The terms of these warranties became part of the basis of the bargain when Plaintiff and each member of the Class purchased their Class Vehicles.

142.     The Vehicle Manufacturer Defendants have breached these warranties. The Class Vehicles are defective, as described above, which resulted in the problems and failures also described above.

143.     The Vehicle Manufacturer Defendants' conduct as described herein, including knowledge of the defects inherent in the vehicles and the Vehicle Manufacturer Defendants' action, and inaction, in the face of the knowledge, the Vehicle Manufacturer Defendants have failed to comply with their obligations under their written and implied promises, warranties, and representations.

144.     Pursuant to 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action, and are not required to give the Vehicle Manufacturer Defendants notice and an opportunity to cure, until such time as the Court determines the representative capacity of Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure. Furthermore, affording each of the Vehicle Manufacturer Defendants a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile. At the time of the sale or lease of each Class Vehicle, each of the Vehicle Manufacturer Defendants knew, or should have known, or was reckless in not knowing of its misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the design defect.  Under

the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff or members of the Class resort to an informal dispute resolution procedure and/or afford each of the Vehicle Manufacturer Defendants a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

145.     In their capacity as warrantor, and by the conduct described herein, any attempts by the Vehicle Manufacturer Defendants to limit the implied warranties in a manner that would exclude coverage of the defects is unconscionable and any such effort to disclaim, or otherwise limit, liability for the defect is null and void.

146.     All jurisdictional prerequisites have been satisfied.

147.     Privity of contract is not required here because Plaintiffs and each member of the Class are intended beneficiaries of the Vehicle Manufacturer Defendants' implied and express warranties. The warranty agreements were designed for and intended to benefit consumers only. Finally, privity is also not required because the Class Vehicles are dangerous instrumentalities due to the defect alleged herein.

148.     As a direct and proximate result of the Vehicle Manufacturer Defendants' breach of the written and implied warranties, Plaintiff and each member of the Class have suffered damages.

149.     Plaintiffs, individually and on behalf of the Class, seek all damages permitted by law, including compensation for the monetary difference between the Class Vehicles as warranted and as sold; compensation for the reduction in resale value; the cost of purchasing, leasing, or renting replacement vehicles, along with all other incidental and consequential damages, statutory attorney fees, and all other relief allowed by law.

**COUNT IV**
**FRAUD BY CONCEALMENT**
**(Against All Defendants)**

150.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

151.     Plaintiffs bring this Action on behalf of themselves and the Nationwide Class or,

in the alternative, on behalf of the State Classes, against all Defendants.

152.     Defendants failed to disclose the defect in each of the Class vehicles and represented that the vehicles were equipped with airbags. Through advertisements and other avenues, Defendants consistently represented that their vehicles were equipped with airbags. Any reasonable consumer would understand those representations to mean that the airbags were free from defects.

153.     Defendants concealed and suppressed the fact that the Class Vehicles had a defect in the ACUs since at least August 2011, when the airbag non-deployment crashes were first attributed to damage of the ASIC by EOS. Defendants failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Defective ACUs installed in them. Defendants knowingly concealed this material fact from Plaintiffs and Class members to mislead them.

154.     Plaintiffs and Class members did not know this fact and could not have discovered it through reasonably diligent investigation.

155.     Defendants had a duty to disclose the existence of the ACU defect because:

        a.   the Defendants had exclusive knowledge of the material facts; and

        b.   the Defendants took affirmative actions to conceal the material facts, including by not timely notifying NHTSA and consumers about the existence of the ACU defect.

156.     When each named Plaintiff decided to buy a Class Vehicle, they received no information from ZF-TRW or the Vehicle Manufacturer Defendants regarding the defective and potentially dangerous ACU. The failure to disclose the defect was consistent and pervasive. In advertising and materials provided with each Class Vehicle, the ACU defect was uniformly concealed from Plaintiffs and consumers.

157.     Defendants intentionally concealed, suppressed and failed to disclose the ACU defect in the Class Vehicles and the nature of risk that the airbags would not deploy in a collision. The full and complete nature of the defect was concealed from Plaintiffs, Class members, and the general public. Defendants knew or should have known the true facts. However, at no time did

1   any of the Defendants reveal the truth to Plaintiffs or the Class. Instead, each Defendant

2   concealed the truth, intending that Plaintiffs and the Class would rely on their concealment, which

3   Plaintiffs and the Class did.

4       158.      A reasonable consumer expects a vehicle's airbags to function during a real-world

5   collision when that vehicle is advertised as being equipped with airbags. Plaintiffs and members

6   of the Class did not know of the facts, which were concealed from them by Defendants.

7       159.      Defendants had a duty to disclose the true nature of the defect in light of their

8   representation that the vehicles were equipped with airbags because a reasonable consumer would

9   believe that if a vehicle has airbags, the airbags will function when needed.

10       160.      On information and belief, Defendants still have not made full and adequate

11   disclosures and continue to defraud Plaintiffs and the members of the Class by concealing

12   material information regarding the Defective ACUs and the likelihood that the airbags will fail to

13   deploy when needed.

14       161.      But for Defendants' fraud, Plaintiffs and the members of the Class would not have

15   purchased the Class Vehicles, or would have paid less for them. Plaintiffs and members of the

16   Class have sustained damage because they purchased vehicles that diminished in value as a result

17   of Defendants' fraud, and because the vehicles are not worth the full price paid at the time of

18   purchase. Accordingly, Defendants are liable to Plaintiffs and the members of the Class for

19   damages in an amount to be proved at trial.

20       162.      Defendants' acts were done deliberately with intent to defraud and in reckless

21   disregard of the rights of Plaintiffs and the Class and the safety of consumers and the public at

22   large; and to enrich themselves through additional vehicle sales. Their misconduct warrants an

23   assessment of punitive damages sufficient to deter such conduct in the future, which amount shall

24   be determined according to proof at trial.

25   **COUNT V**
26   **UNJUST ENRICHMENT**
    **(Against the Vehicle Manufacturer Defendants)**

27

28       163.      Plaintiffs incorporate by reference all preceding allegations as though fully set

1     forth herein.

2         164.        Plaintiffs bring this claim against the Vehicle Manufacturer Defendants on behalf

3     of themselves and the members of the Nationwide Class under the common law of unjust

4     enrichment, as there are no true conflicts (case-dispositive differences) among various states'

5     laws of unjust enrichment. In the alternative, Plaintiffs bring this claim under the laws of the

6     states where Plaintiffs and Class members reside and/or purchased or leased their Class Vehicles.

7         165.        The Vehicle Manufacturer Defendants have received and retained a benefit from

8     Plaintiffs and Class members and inequity has resulted.

9         166.        The Vehicle Manufacturer Defendants benefitted through their unjust conduct, by

10    selling or leasing Class Vehicles with a concealed safety-and-reliability related defect, at a profit,

11    for more than these Class Vehicles were worth, to Plaintiffs and Class members, who overpaid for

12    these Class Vehicles, and/or would not have purchased these Class Vehicles at all; and who have

13    been forced to pay other costs.

14        167.        It is inequitable for the Vehicle Manufacturer Defendants to retain these benefits.

15        168.        Plaintiffs and Class members do not have an adequate remedy at law.

16        169.        As a result of the Vehicle Manufacturer Defendants' conduct, the amount of their

17    unjust enrichment should be disgorged, in an amount to be proven at trial.

18                                       **COUNT VI**
          **VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW**
19                         **(Cal. Bus. & Prof. Code § 17200, *et seq*.)**
                                   **(Against All Defendants)**
20

21        170.        Plaintiffs incorporate by reference all preceding allegations as though fully set

22    forth herein.

23        171.        Plaintiffs bring this cause of action on behalf of themselves and the Nationwide

24    Class, or in the alternative, Plaintiff Burns brings this cause of action on behalf of the California

25    State Class, against all Defendants.

26        172.        California law applies to the Nationwide Class because the unlawful, unfair, or

27    fraudulent acts and practices complained of emanated primarily from California, where HMA and

28    KMA have their principal place of business.

173.     California's Unfair Competition Law ("UCL"), Business and Professions Code § 17200, prohibits any "unlawful, unfair, or fraudulent business act or practices."

174.     Defendants are "persons" within the meaning of Cal. Bus. & Prof. Code §17201.

175.     Defendants (1) failed to disclose and concealed the existence and nature of the defect and the dangers and risks posed by the Class Vehicles and/or the Defective ACUs installed in them; (2) touted the safety of the vehicles through its marketing, advertising and broadly disseminated representations that the Class vehicles were safe and equipped with standard safety features including airbags, and (3) failed to promptly notify vehicle owners, purchasers and dealers of the defective Class Vehicles and/or Defective ACUs. In so doing, the Defendants have engaged in at least the following unlawful, fraudulent, and unfair business acts and practices in violation of the UCL:

      a.  by knowingly and intentionally concealing from Plaintiffs and other Class members that the Class Vehicles suffer from a design defect while obtaining money from Plaintiffs and Class members;

      b.  by marketing Class Vehicle as being equipped with standard safety features including airbags while failing to discuss that the ACUs have a defect;

      c.  by violating federal law, the Federal Motor Vehicle Safety Standard ("FMVSS") 573, which governs a motor vehicle manufacturer's responsibility to notify NHTSA of a motor vehicle defect, by failing to promptly notify vehicle owners, purchases, dealers and NHTSA of the defective Class Vehicles and/or the Defective ACUs installed in them and failing to remedy the defect. See 49 C.F.R. § 573.6.

176.     Defendants' active concealment of the dangers and risks posed by the Class Vehicles and/or the Defective ACUs were material to Plaintiffs and Class members, and Defendants misrepresented, concealed, and failed to disclose and remedy the truth with the intention that consumers would rely on their misrepresentation, concealments and omissions. These acts were likely to mislead the public as to their defective nature, and did in fact deceive

Plaintiffs, about material information. Had they known the truth, Plaintiffs and Class members who purchased or leased the Class vehicles would not have purchased or leased them, or would have paid significantly less for them.

177.    Defendants have engaged in unlawful, fraudulent, and unfair business acts and practices in violation of the UCL by knowingly and intentionally concealing the ACU defect in the Class Vehicles from Plaintiffs and Class members, as well as the risks of serious harm and monetary damage stemming therefrom. This information was material to Plaintiffs and Class members, just as it would be to any reasonable consumer.

178.    Defendants were in a superior position to know the true nature of the Class Vehicles and Plaintiff and Class members could not discover the true facts about the defects through ordinary and reasonable diligence. Defendants had a duty to disclose the ACU defect because it constitutes a safety issue for drivers and passengers of Class Vehicles.

179.    Defendants' failure to disclose these facts violated the UCL, breached the duty to disclose, and injured Plaintiffs and Class Members. Plaintiffs and Class members could not have reasonably avoided these injuries. Plaintiffs and Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations, concealment and failure to disclose material information. Pursuant to Cal. Bus. & Prof. Code § 17200, Plaintiffs and the Class seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and any such orders or judgments as may be necessary to restore Plaintiffs and Class members any money acquired by the unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code §§ 17203 and 3345, and any other just and proper relief available under the California UCL.

180.    Plaintiffs request that this Court enter such orders or judgements as may be necessary to enjoin the Defendants from continuing their unfair, unlawful, and/or deceptive practices, as provided in Cal. Bus. & Prof. Code § 17203; and for such other relief set forth below.

**COUNT VII**
**VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT**
**(Cal. Civ. Code § 1750 *et seq.*)**
**(Against All Defendants)**

181.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

182.    Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class, or in the alternative, Plaintiff Burns brings this cause of action on behalf of the California State Class, against all Defendants.

183.    California law applies to the Nationwide Class because the unlawful, unfair, or fraudulent acts and practices complained of emanated primarily from California, where HMA and KMA have their principal place of business.

184.    Defendants are "persons" within the meaning of Cal. Civ. Code § 1761(c). Plaintiffs and Class members are "consumers" within the meaning of Cal. Civ. Code § 1761(d).

185.    The California Legal Remedies Act ("CLRA") prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer[.]" Cal. Civ. Code § 1770(a).

186.    As described above and below, Defendants engaged in unfair or deceptive acts or practices that violated the CLRA by, among other things, representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

187.    In the course of their business, Defendants failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Defective ACUs installed in them as described herein and otherwise engaged in activities with a tendency or capacity to deceive.

188.    Defendants also engaged in unlawful trade practices by representing that the Class

Vehicles and/or the Defective ACUs installed in them have characteristics, uses, benefits, and qualities which they do not have; representing that they are of a particular standard and quality when they are not; advertising them with the intent not to sell or lease them as advertised; and omitting material facts in describing them. Defendants are directly liable for engaging in unfair and deceptive acts or practices in the conduct of trade or commerce in violation of the CLRA.

189.     Defendants have known of the defect in the ACUs since at least August of 2011, when the airbag non-deployment crashes were first attributed to damage of the ASIC by EOS. Defendants failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Defective ACUs installed in them.

190.     By failing to disclose and actively concealing the defect in Class Vehicles and by marketing them as being equipped with airbags, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair or deceptive practices in violation of the CLRA. Defendants deliberately withheld the information about the propensity of the Defective ACUs to fail to deploy airbags and seat belt pretensioners in a crash event due to the ASICs being damaged by EOS, instead of protecting vehicle occupants from bodily injury during accidents, in order to ensure that consumers would purchase the Class Vehicles.

191.     Plaintiff and Class members had no way of discerning that Defendants had deceptively concealed this defect unless and until the defect manifests itself in a vehicle collision. Plaintiffs and Class members could not unravel this deception on their own.

192.     Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and or the Defective ACUs with an intent to mislead the Plaintiffs and Class members.

193.     Defendants' actions constitute a violation of the CLRA. Defendants knew or should have known that their conduct violated the CLRA.

194.     Defendants failed to disclose material information about the safety and reliability of the Class Vehicles.

195.     To protect their profits and to avoid remediation costs, Defendants concealed the dangers and risks posed by the Class Vehicles and allowed unsuspecting consumers to purchase

Class Vehicles and drive highly unsafe vehicles.

196.    Defendants owed Plaintiffs a duty to disclose the defect and its resulting safety risk because they:

        a.   possessed exclusive knowledge that they were supplying parts for, manufacturing, and distributing vehicles throughout the United States with dangerous defects;

        b.   intentionally concealed the dangerous defects from Plaintiffs and Class members; and/or

        c.   made incomplete representations about the safety and reliability of the Class Vehicles generally, while purposefully withholding material facts from the Plaintiffs and the Class that contradicted these representations.

197.    Defendants' unfair and deceptive acts or practices were likely to and did deceive reasonable consumers, including Plaintiffs, about the safety, and value of the Class Vehicles. A reasonable consumer would assume that if a vehicle was advertised as having airbags that the airbags would function properly when necessary. By contrast, Defendants advertised their vehicles as being equipped with airbags without disclosing the dangerous defect that could prevent the potentially lifesaving airbag from deploying in a vehicle collision.

198.    Plaintiffs and Class members have suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment of and failure to disclose material information. Plaintiffs and Class members who purchased or leased Class Vehicles would not have done so at all, if their true nature was known.

199.    Meanwhile, Defendants had an ongoing duty to consumers to refrain from unfair and deceptive practices under the CLRA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

200.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

201.     The Class Vehicles and the Defective ACUs installed in them are inherently dangerous and present an unreasonable risk of harm and serious bodily injury to the Class, passengers, other motorists, pedestrians and the public at large, because the Defective ACUs will not deploy lifesaving safety measures of airbags and seatbelt pretensioners, which increases the risk of serious bodily injury during accidents.

202.     Defendants knew the Class Vehicles and or the Defective ACUs installed in them contained a defect that could cause airbags and seatbelt pretensioners to fail, but Defendants failed for many years to inform NHTSA of this defect. ZF-TRW, HMA, and KMA were each actively involved in the investigation of the defect, communicated directly with NHTSA, and failed to inform the public of the defect. Consequently, the public, including the Class, received no notice of the defect.

203.     As a direct and proximate result of Defendants' violations of the CLRA, the Class members have suffered an injury-in-fact and/or actual damage as a result of Defendants' acts and omissions in violation of the CLRA, and the violations present a continuing risk to the Class as well as the general public.

204.     Plaintiffs further seek an order enjoining Defendants' unfair or deceptive acts or practices.

**B.  Claims Asserted on Behalf of the State Classes**

**COUNT VIII**
**VIOLATION OF THE SONG-BEVERLY WARRANTY ACT**
**(Cal. Civ. Code § 1790 et seq.)**
**(Against the Vehicle Manufacturer Defendants)**

205.     Plaintiff Kevin Burns (for the purpose of this section, "Plaintiff") incorporates and re-alleges each preceding paragraph as though fully set forth herein.

206.     Plaintiff brings this Action on behalf of himself and the California State Class, against the Vehicle Manufacturer Defendants.

207.     Plaintiff and other Class members who purchased or leased the Class Vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

208.     The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 13 1791(a).

209.     The Vehicle Manufacturer Defendants are "manufacturer[s]" of the Class Vehicles with the meaning of Cal. Civ. Code § 1791(j).

210.     Cal. Civ. Code § 1791.1(a) states: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

      a.   Pass without objection in the trade under the contract description.

      b.   Are fit for the ordinary purpose for which such goods are used.

      c.   Are adequately contained, packaged, and labeled.

      d.   Conform to the promises or affirmations of fact made on the container or label.

211.     The Vehicle Manufacturer Defendants impliedly warranted to Plaintiffs and other Class members that its Class Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) & 1792, however, the Class Vehicles do not have the quality that a buyer would reasonably expect and are not fit for the ordinary purposes for which they were sold because the Class Vehicles and their air bags contained an inherent defect at the time of sale.  The Class Vehicles would not pass without objection in the automotive trade because they were equipped with defective ACUs. This defect may cause airbags to fail to deploy in a crash event, leading to an unreasonable likelihood of serious bodily injury or death to vehicle occupants.

212.     Because of the ACU defect, the Class Vehicles are not safe to drive, and thus not fit for ordinary purposes.

213.     The Defective ACUs have deprived Plaintiffs of the benefit of their bargain and have caused the Class Vehicles to depreciate in value.

214.     Each Vehicle Manufacturer Defendant had notice of these issues, through customer complaints, numerous complaints filed against them and/or others, internal investigations, and consumer communications.

215.     The Class Vehicles are not adequately labeled because the labeling fails to disclose

the ACU defect. The Vehicle Manufacturer Defendants failed to warn about the dangerous defect in the Class Vehicles.

216.     As a direct and proximate result of the Vehicle Manufacturer Defendants' breach of their duties under California's Lemon Law, Plaintiffs and the Class received goods whose dangerous condition substantially impairs their value. Plaintiffs and the Class have been damaged by the diminished value, defect, and non-use of their Class Vehicles.

217.     Because the Class Vehicles are defective, the Vehicle Manufacturer Defendants' actions breach the implied warranty that the Class Vehicles were of merchantable quality and fit for the use for which they were purchased and violated the Song-Beverly Warranty Act.

218.     Under Cal. Civ. Code §§ 1791.1(d) and 1794, Plaintiffs and the Class are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Class Vehicles or the overpayment or diminution in value of their Class Vehicles.

219.     Under Cal. Civ. Code §1794, Plaintiffs and the Class are entitled to costs and attorneys' fees.

**COUNT IX**
**VIOLATIONS OF THE PRIVATE RIGHT OF ACTION**
**FOR CONSUMER FRAUDS ACT**
**(Iowa Code § 714h.1, *et seq.*)**
**(Against All Defendants)**

220.     Plaintiff Larry Flowers incorporates and re-alleges each preceding paragraph as though fully set forth herein.

221.     Plaintiff brings this action on behalf of himself and the Iowa State Class against ZF-TRW and the Vehicle Manufacturer Defendants.

222.     Plaintiff, Defendants, and Iowa State Class members are "persons" within the meaning of Iowa Code § 714H.2(7).

223.     Plaintiff and the Iowa State Class members are "consumers" within the meaning of Iowa Code § 714H.2(3).

224.     The Iowa Private Right of Action for Consumer Frauds Act ("Iowa CFA") prohibits a person from engaging in a "practice or act the person knows or reasonably should

know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise." Iowa Code § 714H.3.

225.     In the course their business, Defendants failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Defective ACUs installed in them as described herein, and otherwise engaged in activities with a tendency or capacity to deceive. Accordingly, Defendants engaged in unfair or deceptive acts or practices, including: representing that the class vehicles and/or the Defective ACUs installed in them have characteristics, uses, benefits, and qualities which they do not have; representing that they are of a particular standard and quality when they are not; failing to reveal a material fact, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and/or failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

226.     Defendants have known of the Defective ACUs and actively concealed the dangers and risks posed by the Class Vehicles and/or the Defective ACUs installed in them.

227.     Defendants' willfully failed to disclose and actively concealed the defect in the Class Vehicles and/or the Defective ACUs installed in them by repeatedly asserting that the class vehicles and/or the Defective ACUs installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

228.     Defendants knew or should have known that their conduct violated the Iowa FCA.

229.     Defendants owed Plaintiff Flowers and members of the Iowa State Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them because the Vehicle Manufacturer Defendants:

        a.   possessed exclusive knowledge of the dangers and risks posed by the foregoing;

b.   intentionally concealed the foregoing from Plaintiffs; and/or

c.   made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

230.     Because Defendants fraudulently concealed the Defective ACUs and/or the Class Vehicles equipped with the Defective ACUs, and disclosure of the Defective ACUs would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class Vehicles has greatly diminished. In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than the otherwise would be.

231.     Defendants' failure to disclose and active concealment of the dangers and risks posed by the Defective ACUs and/or the Class Vehicles equipped with the Defective ACUs were material to Plaintiff Flowers and members of the Iowa State Class. A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

232.     Plaintiff and members of the Iowa State Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the Defective ACUs and/or the Class Vehicles equipped with the Defective ACUs, Plaintiff, and members of the Iowa State Class either would have paid less for their vehicles or would not have purchased or leased them at all.

233.     Plaintiff, and the Iowa State Class members, did not receive the benefit of their bargain as a result of Defendants' misconduct.

234.     The unlawful acts and practices complained of herein affect public interest. Defendants' violations present a continuing risk to Plaintiff and members of the Iowa State Class, as well as to the general public.

235.     As a direct and proximate result of Defendants' violations of the Iowa CFA, the members of the Class have suffered injury-in-fact and/or actual damage.

236.     Pursuant to IOWA CODE § 714H.5, the members of the Class seek an order

1    enjoining Defendants' unfair and/or deceptive acts or practices, actual damages, court costs and

2    attorneys' fees, and any other just and proper relief available under the Iowa CFA. Because

3    Defendants' conduct was committed willfully, the members of the Class also seek treble damages

4    as provided in IOWA CODE § 714H.5(4).

5                                        **COUNT X**
                              **BREACH OF IMPLIED WARRANTIES**
6                  **(Iowa Code §§554.2314, 554.2315, 554.13103, and 554.13212)**
                                   **(Against All Defendants)**
7

8        237.    Plaintiff Larry Flowers (for the purpose of this section, "Plaintiff")incorporates

9    and re-alleges each preceding paragraph as though fully set forth herein.

10       238.    Plaintiff brings this claim on behalf of himself and all members of the Class, or

11   alternatively, members of the Class that reside and/or purchased or leased their Class Vehicles in

12   Iowa, against all Defendants.

13       239.    Defendants are and were at all relevant times "merchants" with respect to the Class

14   Vehicles and/or Defective ACUs installed in them under Iowa Code §§ 554.2104(1) and

15   554.13103(3), and "sellers" of the Class Vehicles and/or the Defective ACUs installed in them

16   under §554.2103(1)(d).

17       240.    With respect to leases, the Vehicle Manufacturer Defendants are and were at all

18   relevant times "lessors" of motor vehicles under Iowa Code § 554.13103(1)(p).

19       241.    The Class Vehicles and/or Defective ACUs installed in them are and were at all

20   relevant times "goods" within the meaning of Iowa Code §§ 554.2105(1) and 554.13103(1)(h).

21       242.    A warranty that the Class Vehicles and/or the Defective ACUs installed in them

22   were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to

23   Iowa Code §§ 554.2314 and 554.13212.

24       243.    Additionally, a warranty that the Class Vehicles and/or the Defective ACUs

25   installed in them were fit for their particular purpose is implied by law pursuant to Iowa Code §

26   554.1315.

27       244.    Defendants knew at the time of the sale of the Class Vehicles and/or the Defective

28

1   ACUs installed in them, that the Class intended to use the vehicles in a manner requiring a

2   particular standard of performance and durability, and that the Class was relying on Defendants'

3   skill and judgment to furnish suitable products for this particular purpose.

4        245.     The Defective ACUs and/or the Class Vehicles equipped with the Defective ACUs

5   were not in merchantable condition, not fit for the ordinary purpose, and not fit for their particular

6   purpose as a result of their inherent defects, as detailed above.

7        246.     Defendants were provided notice of the inherently dangerous and Defective ACUs

8   by consumer complaints, NHTSA investigations, and their own internal investigations.

9        247.     Defendants' breaches of their implied warranties have caused damage to Plaintiff

10   and the Iowa State Class. The amount of damages will be proven at trial.

11   

**COUNT XI**
**BREACH OF EXPRESS WARRANTY**
**(Iowa Code §§ 554.2313, 554.13103, and 554.13210)**
**(Against the Vehicle Manufacturer Defendants)**

14        248.     Plaintiff Larry Flowers (for the purpose of this section, "Plaintiff")incorporates

15   and re-alleges each preceding paragraph as though fully set forth herein.

16        249.     Plaintiff brings this claim on behalf of himself and all members of the Class, or

17   alternatively, members of the Class that reside and/or purchased or leased their Class Vehicles in

18   Iowa, against the Vehicle Manufacturer Defendants.

19        250.     The Vehicle Manufacturer Defendants are and were at all relevant times

20   "merchants" with respect to Class Vehicles and/or Defective ACUs under Iowa Code §§

21   554.2104(1) and 554.13103(3), and "sellers" of Class Vehicles and/or Defective ACUs under §

22   554.2103(1)(d).

23        251.     With respect to leases, the Vehicle Manufacturer Defendants are and were at all

24   relevant times "lessors" of motor vehicles under Iowa Code § 554.13103(1)(p).

25        252.     The Class Vehicles and/or the Defective ACUs installed in them are and were at

26   all relevant times "goods" within the meaning of Iowa Code §§ 554.2105(1) and 554.13103(1)(h).

27        253.     In connection with the purchase of all Class Vehicles, the Vehicle Manufacturer

28

Defendants provided express warranties. Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance. Kia provides a limited basic warranty for a period of five years or 60,000 miles, whichever occurs first, and covers repairs to vehicles that fail to function properly during normal use. Honda provides a new vehicle limited warranty for a period of three years or 36,000 miles, whichever occurs first, and covers any repairs or replacements of any part that is defective in material or workmanship under normal use. Toyota provides a New Vehicle Limited Warranty for period of three years or 36,000 miles, whichever occurs first and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota. Additionally, the Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to the class.

254.   The Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when the members of the Class purchased or leased their Class Vehicles.

255.   The Defective ACUs existed in the Class Vehicles at the time of sale or lease and within the warranty periods but the members of the Class had no knowledge of the existence of the Defective ACUs, which was known and concealed by the Vehicle Manufacturer Defendants. Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform the members of the Class that the Class Vehicles contained the Defective ACUs during the warranty periods in order to wrongfully transfer the cost of repair or replacement of the Defective ACUs to the members of the Class.

256.   The Class Vehicles are not safe and reliable due to the Defective ACUs and owners and lessees of the vehicles have lost confidence in the ability of the Class Vehicles to perform the function of safe reliable transportation.

257.   The members of the Class could not have reasonably discovered the Defective ACUs.

258.   The Vehicle Manufacturer Defendants breached their express warranties

promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

259.    The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew the Class Vehicles contained the Defective ACUs and the safety risks associated with the defect. Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects, which cause airbags to not perform as warranted.

260.    Specifically, on information and belief, the Vehicle Manufacturer Defendants breached their express warranties by: (a) knowingly providing Plaintiff and members of the Iowa State Class with Class Vehicles containing defects in material that were never disclosed to Plaintiff and members of the Iowa State Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by the Vehicle Manufacturer Defendants.

261.    Affording each of the Vehicle Manufacturer Defendants a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile. At the time of the sale or lease of each Class Vehicle, each of the Vehicle Manufacturer Defendants knew, or should have known, or was reckless in not knowing of its misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the design defect.

262.    Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here. Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased defective products without informing consumers about the defect.

263.    Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make

1    Plaintiff and members of the Iowa State Class whole because, on information and belief, the

2    Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the

3    promised remedies within a reasonable time.

4        264.    The Vehicle Manufacturer Defendants knew that the Class Vehicles were

5    inherently defective and did not conform to their warranties and Plaintiff and members of the

6    Iowa State Class were induced to purchase or lease the Class Vehicles under false and/or

7    fraudulent pretenses.

8        265.    As a direct and proximate result of the Vehicle Manufacturer Defendants' breach

9    of express warranties, Plaintiff and members of the Iowa State Class have been damaged in an

10   amount to be determined at trial.

11       266.    Finally, because of the Vehicle Manufacturer Defendants' breach of express

12   warranties as set forth herein Plaintiff and members of the Iowa State Class assert, as additional

13   and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff

14   and members of the Iowa State Class the purchase or lease price of all Class Vehicles currently

15   owned or leased, and request such other incidental and consequential damages as allowed.

16                              **COUNT XII**
17              **VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT**
                        **(Kan. Stat. Ann. § 50-623, *et seq*.)**
18                          **(Against All Defendants)**

19       267.    Plaintiff Carma Rockers (for the purpose of this section, "Plaintiff")incorporates

20   and re-alleges each preceding paragraph as though fully set forth herein.

21       268.    Plaintiff brings this claim on behalf of herself and all members of the Class, or

22   alternatively, members of the Class that reside and/or purchased or leased their Class Vehicles in

23   Kansas, against all Defendants.

24       269.    Defendants are "suppliers" within the meaning of Kan. Stat. Ann. § 50-624(l). The

25   Kansas State Class members are "consumers" within the meaning of Kan. Stat. Ann. § 50-624(b).

26       270.    The sale of the Class Vehicles to the Kansas State Class members was a

27   "consumer transaction" within the meaning of Kan. Stat. Ann. § 50-624(c).

28

271.     The Kansas Consumer Credit and Protection Act ("Kansas CPA") states "[n]o supplier shall engage in any deceptive act or practice in connection with a consumer transaction." Kan. Stat. Ann. § 50-626(a). Deceptive acts or practices include, but are not limited to: (1) knowingly making representations or with reason to know that "(A) Property or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have"; and "(D) property or services are of particular standard, quality, grade, style or model, if they are of another which differs materially from the representation"; "(2) the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact"; "(3) the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact." The Kansas CPA also states that "[n]o supplier shall engage in any unconscionable act or practice in connection with a consumer transaction." Kan. Stat. Ann. § 50-627(a).

272.     In the course their business, Defendants failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Defective ACUs installed in them as described herein, and otherwise engaged in activities with a tendency or capacity to deceive. Accordingly, Defendants engaged in unfair or deceptive acts or practices, including: representing that the class vehicles and/or the Defective ACUs installed in them have characteristics, uses, benefits, and qualities which they do not have; representing that they are of a particular standard and quality when they are not; failing to reveal a material fact, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and/or failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

273.     Defendants have known of the Defective ACUs and actively concealed the dangers and risks posed by the Class Vehicles and/or the Defective ACUs installed in them.

274.     Defendants' willfully failed to disclose and actively concealed the defect in the Class Vehicles and/or the Defective ACUs installed in them by repeatedly asserting that the class vehicles and/or the Defective ACUs installed in them were safe, reliable, and of high quality, and

1   by claiming to be reputable manufacturers that value safety.

2       275.      Defendants knew or should have known that their conduct violated the Kansas

3   CPA.

4       276.      Defendants owed Plaintiff and members of the Kansas State Class a duty to

5   disclose the true safety and reliability of the Class Vehicles and/or the Defective ACUs installed

6   in them because the Vehicle Manufacturer Defendants:

7            a.   possessed exclusive knowledge of the dangers and risks posed by the

8                 foregoing;

9            b.   intentionally concealed the foregoing from Plaintiffs; and/or

10           c.   made incomplete representations about the safety and reliability of the

11                foregoing generally, while purposefully withholding material facts from

12                Plaintiffs that contradicted these representations.

13      277.      Because Defendants fraudulently concealed the Defective ACUs and/or the Class

14   Vehicles equipped with the Defective ACUs, and disclosure of the Defective ACUs would cause

15   a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class

16   Vehicles has greatly diminished. In light of the stigma attached to class vehicles by Defendants'

17   conduct, they are now worth significantly less than the otherwise would be.

18      278.      Defendants' failure to disclose and active concealment of the dangers and risks

19   posed by the Defective ACUs and/or the Class Vehicles equipped with the Defective ACUs were

20   material to Plaintiff and members of the Kansas State Class. A vehicle made by a reputable

21   manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a

22   disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies

23   them.

24      279.      Plaintiff and members of the Kansas State Class suffered ascertainable loss caused

25   by Defendants' misrepresentations and their failure to disclose material information. Had they

26   been aware of the Defective ACUs and/or the Class Vehicles equipped with the Defective ACUs,

27   Plaintiff, and members of the Kansas State Class either would have paid less for their vehicles or

28   would not have purchased or leased them at all.

280.     Plaintiff, and the Kansas State Class members, did not receive the benefit of their bargain as a result of Defendants' misconduct.

281.     The unlawful acts and practices complained of herein affect the public interest. Defendants' violations present a continuing risk to Plaintiff and members of the Kansas State Class, as well as to the general public.

282.     As a direct and proximate result of Defendants' violations of the Kansas CPA, Plaintiff and Kansas State Class members have suffered injury-in-fact and/or actual damage.

283.     Pursuant to Kan. Stat. Ann. § 50-634, the members of the Class seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $10,000 for each Class member, in addition to treble damages.

284.     The Class also seeks declaratory relief, punitive damages, an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, and reasonable attorneys' fees and costs, as well as any other just and proper thief available under Kan. Stat. Ann. § 50-623, *et seq.*

**COUNT XIII**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(Kan. Stat. Ann. §§ 84-2-314, 84-2A-103, and 84-2A-212)**
**(Against All Defendants)**

285.     Plaintiff Carma Rockers (for the purpose of this section, "Plaintiff") incorporates and re-alleges each preceding paragraph as though fully set forth herein.

286.     Plaintiff brings this claim on behalf of herself and all members of the Class, or alternatively, members of the Class that reside and/or purchased or leased their Class Vehicles in Kansas, against all Defendants.

287.     Defendants were at all relevant times "merchants" with respect to motor vehicles and/or ACUs under Kan. Stat. Ann. §§ 84-2-104(1) and 84-2A-103(3), and "sellers" of motor vehicles and/or ACUs under § 84-2-103(1)(d).

288.     With respect to leases, the Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under Kan. Stat. Ann. § 84-2A-103(1)(p).

289.     The Class Vehicles and/or the Defective ACUs installed in them are and were at all relevant times "goods" within the meaning of Kan. Stat. Ann. §§ 84-2-105(1) and 84-2A-103(1)(h).

290.     A warranty that the Class Vehicles and/or the Defective ACUs installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Kan. Stat. Ann. §§ 84-2-314 and 84-2A-212.

291.     The Defective ACUs and/or the Class Vehicles equipped with the Defective ACUs were not in merchantable condition, not fit for the ordinary purpose, and not fit for their particular purpose as a result of their inherent defects, as detailed above.

292.     Defendants were provided notice of the inherently dangerous and Defective ACUs by consumer complaints, NHTSA investigations, and their own internal investigations.

293.     Defendants' breaches of their implied warranties have caused damage to Plaintiff and the Kansas State Class. The amount of damages will be proven at trial.

**COUNT XIV**
**BREACH OF EXPRESS WARRANTY**
**(Kan. Stat. Ann. §§ 84-2-313, 84-2A-103, and 84-2A-210)**
**(Against All Defendants)**

294.     Plaintiff Carma Rockers (for the purpose of this section, "Plaintiff") incorporates and re-alleges each preceding paragraph as though fully set forth herein.

295.     Plaintiff brings this claim on behalf of herself and all members of the Class, or alternatively, members of the Class that reside and/or purchased or leased their Class Vehicles in Kansas, against the Vehicle Manufacturer Defendants.

296.     The Vehicle Manufacturer Defendants were at all relevant times "merchants" with respect to motor vehicles under Kan. Stat. Ann. §§ 84-2-104(1) and 84-2A-103(3), and "sellers" of motor vehicles under § 84-2-103(1)(d).

297.     With respect to leases, the Vehicle Manufacturer Defendants are and were all relevant times "lessors" of motor vehicles under Kan. Stat. Ann. § 84-2A-103(1)(p).

298.     The Class Vehicles are and were at all relevant times "goods" within the meaning

1    of Kan. Stat. Ann. §§ 84-2-105(1) and 84-2A-103(1)(h).

2        299.      In connection with the purchase of all Class Vehicles, the Vehicle Manufacturer

3    Defendants provided express warranties. Hyundai provides a new vehicle limited warranty for a

4    period of five years or 60,000 miles, whichever occurs first and covers the repair or replacement

5    of any component manufactured or originally installed by Hyundai that is defective in material or

6    factory workmanship, under normal use and maintenance. Kia provides a limited basic warranty

7    for a period of five years or 60,000 miles, whichever occurs first, and covers repairs to vehicles

8    that fail to function properly during normal use. Honda provides a new vehicle limited warranty

9    for a period of three years or 36,000 miles, whichever occurs first, and covers any repairs or

10    replacements of any part that is defective in material or workmanship under normal use. Toyota

11    provides a New Vehicle Limited Warranty for period of three years or 36,000 miles, whichever

12    occurs first and covers repairs and adjustments needed to correct defects in materials or

13    workmanship of any part supplied by Toyota. Additionally, the Vehicle Manufacturer

14    Defendants' various oral and written representations regarding the Class Vehicles' durability,

15    safety, and performance constituted express warranties to the class.

16        300.      The Vehicle Manufacturer Defendants' warranties formed a basis of the bargain

17    that was reached when the members of the Class purchased or leased their Class Vehicles.

18        301.      The Defective ACUs existed in the class vehicles at the time of sale or lease and

19    within the warranty periods but the members of the Class had no knowledge of the existence of

20    the Defective ACUs, which was known and concealed by the Vehicle Manufacturer Defendants.

21    Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform the

22    members of the Class that the Class Vehicles contained the Defective ACUs during the warranty

23    periods in order to wrongfully transfer the cost of repair or replacement of the Defective ACUs to

24    the members of the Class.

25        302.      The Class Vehicles are not safe and reliable due to the Defective ACUs and

26    owners and lessees of the vehicles have lost confidence in the ability of the Class Vehicles to

27    perform the function of safe reliable transportation.

28        303.      The members of the Class could not have reasonably discovered the Defective

ACUs.

304.     The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

305.     The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew the Class Vehicles contained the Defective ACUs and the safety risks associated with the defect. Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects, which cause airbags to not perform as warranted.

306.     Specifically, on information and belief, the Vehicle Manufacturer Defendants breached their express warranties by: (a) knowingly providing Plaintiff and members of the Kansas State Class with Class Vehicles containing defects in material that were never disclosed to Plaintiff Rockers and members of the Kansas State Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by the Vehicle Manufacturer Defendants.

307.     Affording each of the Vehicle Manufacturer Defendants a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile. At the time of the sale or lease of each Class Vehicle, each of the Vehicle Manufacturer Defendants knew, or should have known, or was reckless in not knowing of its misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the design defect.

308.     Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here. Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased defective products without informing consumers about the defect.

309.     Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make Plaintiff Rockers and members of the Kansas State Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

310.     The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and Plaintiff and members of the Kansas State Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

311.     As a direct and proximate result of the Vehicle Manufacturer Defendants' breach of express warranties, Plaintiff and members of the Kansas State Class have been damaged in an amount to be determined at trial.

312.     Finally, because of the Vehicle Manufacturer Defendants' breach of express warranties as set forth herein Plaintiff and members of the Kansas State Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and members of the Kansas State Class the purchase or lease price of all Class Vehicles currently owned or leased, and request such other incidental and consequential damages as allowed.

**COUNT XV**
**VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT**
**(Md. Code Com. Law § 13-101, *et seq.*)**
**(Against All Defendants)**

313.     Plaintiff Diana King (for the purpose of this section, "Plaintiff") incorporates and re-alleges each preceding paragraph as though fully set forth herein.

314.     Plaintiff brings this claim on behalf of herself and all members of the Class, or alternatively, members of the Class that reside and/or purchased or leased their Class Vehicles in Maryland, against all Defendants.

315.     Defendants, Plaintiff, and the Maryland State Class members are "persons" within the meaning of Md. Code Com. Law § 13-101(h).

1    316.    The Class Vehicles and Defective ACUs are "consumer goods" within the

2    meaning of Md. Code Com. Law § 13-101(d)(1).

3    317.    The Maryland Consumer Protection Act ("Maryland CPA") provides that a person

4    may not engage in any unfair or deceptive trade practice in the sale or lease of any consumer

5    good. Md. Code Com. Law § 13-303. Unfair or deceptive trade practices are defined under Md.

6    Code Com. Law § 13-301.

7    318.    The Maryland CPA makes unlawful several specific acts, including, but not

8    limited to: representing that "(2)(i) Consumer goods, consumer realty, or consumer services have

9    a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they

10   do not have"; "(iv) Consumer goods, consumer realty, or consumer services are of a particular

11   standard, quality, grade, style, or model which they are not"; and "(3) Failure to state a material

12   fact if the failure deceives or tends to deceive." Md. Code Com. Law § 13-301.

13   319.    In the course of Defendants' business, Defendants violated the Maryland CPA by

14   failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles

15   and/or the Defective ACUs installed in them, as described above. Specifically, in marketing,

16   offering for sale, and selling the defective Class Vehicles and/or the Defective ACUs installed in

17   them, Defendants engaged in one or more of the following unfair or deceptive acts or practices as

18   defined in Md. Code Com. Law § 13-301: representing that the Class Vehicles and/or the

19   Defective ACUs installed in them have characteristics or benefits that they do not have;

20   representing that they are of a particular standard and quality when they are not; and/or

21   advertising them with the intent not to sell them as advertised.

22   320.    Defendants have known of the Defective ACUs and actively concealed the dangers

23   and risks posed by the Class Vehicles and/or the Defective ACUs installed in them.

24   321.    Defendants' willfully failed to disclose and actively concealed the defect in the

25   Class Vehicles and/or the Defective ACUs installed in them by repeatedly asserting that the class

26   vehicles and/or the Defective ACUs installed in them were safe, reliable, and of high quality, and

27   by claiming to be reputable manufacturers that value safety.

28   322.    Defendants knew or should have known that their conduct violated the Maryland

1  CPA.

2       323.     Defendants owed Plaintiff and members of the Maryland State Class a duty to

3  disclose the true safety and reliability of the Class Vehicles and/or the defective airbag systems

4  installed in them because the Vehicle Manufacturer Defendants:

5               a.   possessed exclusive knowledge of the dangers and risks posed by the

6                    foregoing;

7               b.   intentionally concealed the foregoing from Plaintiffs; and/or

8               c.   made incomplete representations about the safety and reliability of the

9                    foregoing generally, while purposefully withholding material facts from

10                   Plaintiffs that contradicted these representations.

11      324.     Because Defendants fraudulently concealed the Defective ACUs and/or the class

12  vehicles equipped with the Defective ACUs, and disclosure of the Defective ACUs would cause a

13  reasonable consumer to be deterred from purchasing the class vehicles, the value of the class

14  vehicles has greatly diminished. In light of the stigma attached to class vehicles by Defendants'

15  conduct, they are now worth significantly less than the otherwise would be.

16      325.     Defendants' failure to disclose and active concealment of the dangers and risks

17  posed by the Defective ACUs and/or the Class Vehicles equipped with the Defective ACUs were

18  material to Plaintiff and members of the Maryland State Class. A vehicle made by a reputable

19  manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a

20  disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies

21  them.

22      326.     Plaintiff and members of the Maryland State Class suffered ascertainable loss

23  caused by Defendants' misrepresentations and their failure to disclose material information. Had

24  they been aware of the Defective ACUs and/or the Class Vehicles equipped with the Defective

25  ACUs, Plaintiff, and members of the Maryland State Class either would have paid less for their

26  vehicles or would not have purchased or leased them at all.

27      327.     Plaintiff, and the Maryland State Class members, did not receive the benefit of

28  their bargain as a result of Defendants' misconduct.

328.     As a direct and proximate result of Defendants' violations of the Maryland CPA, the members of the Class have suffered injury-in-fact and/or actual damage.

329.     Pursuant to Md. Code Com. Law § 13-408, Plaintiff and members of the Maryland State Class seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages and any other just and proper relief available under the Maryland CPA.

**COUNT XVI**
**BREACH OF IMPLIED WARRANTIES**
**(Md. Code Com. Law §§ 2-314, 2-315, 2A-103, and 2A-212)**
**(Against All Defendants)**

330.     Plaintiff Diana King (for the purpose of this section, "Plaintiff") incorporates and re-alleges each preceding paragraph as though fully set forth herein.

331.     Plaintiff brings this claim on behalf of herself and all members of the Class, or alternatively, members of the Class that reside and/or purchased or leased their Class Vehicles in Maryland, against all Defendants.

332.     Defendants are and were at all relevant times "merchants" with respect to motor vehicles and/or ACUs under Md. Code Com. Law § 2-104(1), and "sellers" of motor vehicles and/or ACUs under § 2-103(1)(d).

333.     With respect to leases, the Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under Md. Code Com. Law § 2A-103(1)(p).

334.     The Class Vehicles and/or the Defective ACUs installed in them are and were at all relevant times "goods" within the meaning of Md. Code Com. Law §§ 2-105(1) and 2A-103(1)(h).

335.     A warranty that the Class Vehicles and/or the Defective ACUs installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Md. Code Com. Law §§ 2-314 and 2A-212.

336.     Additionally, a warranty that the Class Vehicles and/or the Defective ACUs installed in them were fit for their particular purpose is implied by law pursuant Md. Code Com. Law §§ 2-315 and 2A-213.

337.     Defendants knew at the time of the sale of the Class Vehicles and/or the Defective ACUs installed in them, that the Class intended to use the vehicles in a manner requiring a particular standard of performance and durability, and that the Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

338.     The Defective ACUs and/or the Class Vehicles equipped with the Defective ACUs were not in merchantable condition, not fit for the ordinary purpose, and not fit for their particular purpose as a result of their inherent defects, as detailed above.

339.     Defendants were provided notice of the inherently dangerous and Defective ACUs by consumer complaints, NHTSA investigations, and their own internal investigations.

340.     Defendants' breaches of their implied warranties have caused damage to Plaintiff and the Maryland State Class. The amount of damages will be proven at trial.

**COUNT XVII**
**BREACH OF EXPRESS WARRANTY**
**(Md. Code, Com. Law §§ 2-313, 2A-103, and 2A-210)**
**(Against the Vehicle Manufacturer Defendants)**

341.     Plaintiff Diana King (for the purpose of this section, "Plaintiff") incorporates and re-alleges each preceding paragraph as though fully set forth herein.

342.     Plaintiff brings this claim on behalf of herself and all members of the Class, or alternatively, members of the Class that reside and/or purchased or leased their Class Vehicles in Maryland, against the Vehicle Manufacturer Defendants.

343.     The Vehicle Manufacturer Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Md. Code Com. Law § 2-104(1) and "sellers" of motor vehicles under § 2-103(1)(d).

344.     With respect to leases, the Vehicle Manufacturer Defendants are and were all relevant times "lessors" of motor vehicles under Md. Code Com. Law § 2A-103(1)(p).

345.     The Class Vehicles are and were at all relevant times "goods" within the meaning of Md. Code Com. Law §§ 2-105(1) and 2A-103(1)(h).

346.     Plaintiff and the members of the Maryland State Class are and were at all relevant

times "buyers" of the Class Vehicles under Md. Code Com. Law § 2A-103(1)(a).

347.    In connection with the purchase of all Class Vehicles, the Vehicle Manufacturer Defendants provided express warranties. Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance. Kia provides a limited basic warranty for a period of 5 years or 60,000 miles, whichever occurs first, and covers repairs to vehicles that fail to function properly during normal use. Honda provides a new vehicle limited warranty for a period of 3 years or 36,000 miles, whichever occurs first, and covers any repairs or replacements of any part that is defective in material or workmanship under normal use. Toyota provides a New Vehicle Limited Warranty for period of three years or 36,000 miles, whichever occurs first and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota. Additionally, the Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to the class.

348.    The Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when the members of the Class purchased or leased their Class Vehicles.

349.    The Defective ACUs existed in the Class Vehicles at the time of sale or lease and within the warranty periods but the members of the Class had no knowledge of the existence of the Defective ACUs, which was known and concealed by the Vehicle Manufacturer Defendants. Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform the members of the Class that the Class Vehicles contained the Defective ACUs during the warranty periods in order to wrongfully transfer the cost of repair or replacement of the Defective ACUs to the members of the Class.

350.    The Class Vehicles are not safe and reliable due to the Defective ACUs and owners and lessees of the vehicles have lost confidence in the ability of the Class Vehicles to perform the function of safe reliable transportation.

351.    The members of the Class could not have reasonably discovered the Defective

1    ACUs.

2         352.    The Vehicle Manufacturer Defendants breached their express warranties

3    promising to repair and correct a manufacturing defect or defects in materials or workmanship of

4    any parts they supplied.

5         353.    The Vehicle Manufacturer Defendants further breached their express warranties by

6    selling Class Vehicles that were defective with respect to materials, workmanship, and

7    manufacture when the Vehicle Manufacturer Defendants knew the Class Vehicles contained the

8    Defective ACUs and the safety risks associated with the defect. Class Vehicles were not of

9    merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are

10   used because of materials, workmanship, and manufacture defects, which cause airbags to not

11   perform as warranted.

12        354.    Specifically, on information and belief, the Vehicle Manufacturer Defendants

13   breached their express warranties by: (a) knowingly providing Plaintiff and members of the

14   Maryland State Class with Class Vehicles containing defects in material that were never disclosed

15   to Plaintiff and members of the Maryland State Class; (b) failing to repair or replace the defective

16   Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and

17   denying warranty claims in bad faith; and (d) supplying products and materials that failed to

18   conform to the representations made by the Vehicle Manufacturer Defendants.

19        355.    Affording each of the Vehicle Manufacturer Defendants a reasonable opportunity

20   to cure its breach of written warranties would be unnecessary and futile. At the time of the sale or

21   lease of each Class Vehicle, each of the Vehicle Manufacturer Defendants knew, or should have

22   known, or was reckless in not knowing of its misrepresentations and omissions concerning the

23   Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation

24   and/or disclose the design defect.

25        356.    Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery

26   to the terms of the express warranties is unconscionable and unenforceable here. Specifically, the

27   Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they

28   knowingly sold or leased defective products without informing consumers about the defect.

357.     Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make Plaintiff and members of the Maryland State Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

358.     The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and Plaintiff and members of the Maryland State Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

359.     As a direct and proximate result of the Vehicle Manufacturer Defendants' breach of express warranties, Plaintiff and members of the Maryland State Class have been damaged in an amount to be determined at trial.

360.     Finally, because of the Vehicle Manufacturer Defendants' breach of express warranties as set forth herein Plaintiff and members of the Maryland State Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff King and members of the Maryland State Class the purchase or lease price of all Class Vehicles currently owned or leased, and request such other incidental and consequential damages as allowed.

**COUNT XVIII**
**NEW YORK BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(N.Y. U.C.C. Law §§ 2-314 and 2A-212)**
**(Against all Defendants)**

361.     Plaintiff Christopher Berry (for the purpose of this section, "Plaintiff") incorporates and re-alleges each preceding paragraph as though fully set forth herein.

362.     Plaintiff brings this claim on behalf of himself and all members of the Class, or alternatively, members of the Class that reside and/or purchased or leased their Class Vehicles in New York State, against the Vehicle Manufacturer Defendants.

363.     Defendants are and were at all relevant times merchants with respect to motor

vehicles and/or airbags under N.Y. UCC Law § 2-104(1) and "sellers" of motor vehicles under § 2-103(1)(d).

364.    The Class Vehicles and airbags are and were at all relevant times "goods" within the meaning of N.Y. UCC Law §§ 2-105(1) and 2A-103(1)(h).

365.    A warranty that the Class Vehicles and/or the defective airbag systems installed in them were in merchantable condition was implied by law in Class Vehicle transactions, pursuant to N.Y. UCC Law §§ 2-314 and 2A-212.

366.    The Class Vehicles and/or the defective airbag systems installed in them, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars and airbags are used. Specifically, they are inherently defective and dangerous in that the defective airbag systems fail to deploy during accidents.

367.    Defendants were provided notice of these issues by their knowledge of the issues, by numerous complaints filed against them and/or others, and by internal and NHTSA investigations.

368.    As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiff and members of the New York State Class have been damaged in an amount to be proven at trial.

**COUNT XIX**
**BREACH OF EXPRESS WARRANTY**
**(N.Y. U.C.C. Law §§ 2-313 and 2A-210)**
**(Against the Vehicle Manufacturer Defendants)**

369.    Plaintiff Christopher Berry (for the purpose of this section, "Plaintiff") incorporates and re-alleges each preceding paragraph as though fully set forth herein.

370.    Plaintiff brings this claim on behalf of himself and all members of the Class, or alternatively, members of the Class that reside and/or purchased or leased their Class Vehicles in New York State, against the Vehicle Manufacturer Defendants.

371.    The Vehicle Manufacturer Defendants are and were at all relevant times "merchants" with respect to motor vehicles under N.Y. UCC Law § 2-104(1) and "sellers" of

motor vehicles under § 2-103(1)(d).

372.     With respect to leases, the Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under N.Y. UCC Law § 2A-103(1)(p).

373.     The Class Vehicles are and were at all relevant times "goods" within the meaning of N.Y. UCC Law §§ 2-105(1) and 2A-103(1)(h).

374.     In connection with the purchase of all Class Vehicles, the Vehicle Manufacturer Defendants provided express warranties. Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance. Kia provides a limited basic warranty for a period of five years or 60,000 miles, whichever occurs first, and covers repairs to vehicles that fail to function properly during normal use. Honda provides a new vehicle limited warranty for a period of three years or 36,000 miles, whichever occurs first, and covers any repairs or replacements of any part that is defective in material or workmanship under normal use. Toyota provides a New Vehicle Limited Warranty for period of three years or 36,000 miles, whichever occurs first and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota. Additionally, the Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to the class.

375.     The Defective ACUs existed in the class vehicles at the time of sale or lease and within the warranty periods but the members of the Class had no knowledge of the existence of the Defective ACUs, which was known and concealed by the Vehicle Manufacturer Defendants. Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform the members of the Class that the Class Vehicles contained the Defective ACUs during the warranty periods in order to wrongfully transfer the cost of repair or replacement of the Defective ACUs to the members of the Class.

376.     The Class Vehicles are not safe and reliable due to the Defective ACUs and owners and lessees of the vehicles have lost confidence in the ability of the Class Vehicles to

1    perform the function of safe reliable transportation.

2    377.      The members of the Class could not have reasonably discovered the Defective

3    ACUs.

4    378.      The Vehicle Manufacturer Defendants breached their express warranties

5    promising to repair and correct a manufacturing defect or defects in materials or workmanship of

6    any parts they supplied.

7    379.      The Vehicle Manufacturer Defendants further breached their express warranties by

8    selling Class Vehicles that were defective with respect to materials, workmanship, and

9    manufacture when the Vehicle Manufacturer Defendants knew the Class Vehicles contained the

10    Defective ACUs and the safety risks associated with the defect. Class Vehicles were not of

11    merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are

12    used because of materials, workmanship, and manufacture defects, which cause airbags to not

13    perform as warranted.

14    380.      Specifically, on information and belief, the Vehicle Manufacturer Defendants

15    breached their express warranties by: (a) knowingly providing Plaintiff and members of the New

16    York State Class with Class Vehicles containing defects in material that were never disclosed to

17    Plaintiff and members of the New York State Class; (b) failing to repair or replace the defective

18    Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and

19    denying warranty claims in bad faith; and (d) supplying products and materials that failed to

20    conform to the representations made by the Vehicle Manufacturer Defendants.

21    381.      Affording each of the Vehicle Manufacturer Defendants a reasonable opportunity

22    to cure its breach of written warranties would be unnecessary and futile. At the time of the sale or

23    lease of each Class Vehicle, each of the Vehicle Manufacturer Defendants knew, or should have

24    known, or was reckless in not knowing of its misrepresentations and omissions concerning the

25    Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation

26    and/or disclose the design defect.

27    382.      Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery

28    to the terms of the express warranties is unconscionable and unenforceable here. Specifically, the

Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased defective products without informing consumers about the defect.

383.    Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make Plaintiff and members of the New York State Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

384.    The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and Plaintiff and members of the New York State Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

385.    As a direct and proximate result of the Vehicle Manufacturer Defendants' breach of express warranties, Plaintiff and members of the New York State Class have been damaged in an amount to be determined at trial.

386.    Finally, because of the Vehicle Manufacturer Defendants' breach of express warranties as set forth herein Plaintiff and members of the New York State Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and members of the New York State Class the purchase or lease price of all Class Vehicles currently owned or leased, and request such other incidental and consequential damages as allowed.

## COUNT XX
## VIOLATION OF THE NEW YORK GENERAL BUSINESS LAW § 349
### (N.Y. Gen. Bus. Law § 349)
### (Against the Vehicle Manufacturer Defendants)

387.    Plaintiff Christopher Berry (for the purpose of this section, "Plaintiff") incorporates and re-alleges each preceding paragraph as though fully set forth herein.

388.    Plaintiff brings this claim on behalf of himself and all members of the Class, or alternatively, members of the Class that reside and/or purchased or leased their Class Vehicles in

1    New York State, against the Vehicle Manufacturer Defendants.

2        389.      Plaintiffs and New York State Class are "persons" within the meaning of New

3    York General Business Law ("New York GBL"), N.Y. Gen. Bus. Law § 349(h).

4        390.      Defendants are "persons," "firms," "corporations," or "associations" within the

5    meaning of N.Y. Gen. Bus. Law § 349.

6        391.      The New York GBL makes unlawful "[d]eceptive acts or practices in the conduct

7    of any business, trade or commerce." N.Y. Gen. Bus. Law § 349.

8        392.      The Vehicle Manufacturer Defendants'' conduct directed toward consumers, as

9    described above and below, constitutes "deceptive acts or practices" within the meaning of the

10   New York GBL. The Vehicle Manufacturer Defendants engaged in deceptive trade practices that

11   violated the New York GBL, including: knowingly representing that Class Vehicles and/or the

12   defective airbag systems installed in them have uses and benefits which they do not have;

13   representing that they are of a particular standard, quality, and grade when they are not;

14   advertising them with the intent not to sell or lease them as advertised; representing that the

15   subject of a transaction involving them has been supplied in accordance with a previous

16   representation when it has not; and knowingly making other false representations in a transaction.

17       393.      The Vehicle Manufacturer Defendants' actions as set forth above occurred in the

18   conduct of trade or commerce.

19       394.      In the course of their business, the Vehicle Manufacturer Defendants failed to

20   disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the

21   defective airbag systems installed in them as described herein and otherwise engaged in activities

22   with a tendency or capacity to deceive. Defendants also engaged in unlawful trade practices by

23   employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment,

24   suppression or omission of any material fact with intent that others rely upon such concealment,

25   suppression or omission, in connection with the sale of the Class Vehicles and/or the defective

26   airbag systems installed in them.

27       395.      The Vehicle Manufacturer Defendants have known of the Defective ACUs and

28   failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or

1    the Defective ACUs installed in them.

2    396.    By failing to disclose and by actively concealing the Defective ACUs and/or the

3    Class Vehicles equipped with them, by marketing them as safe, reliable, and of high quality, and

4    by presenting themselves as reputable manufacturers that value safety, the Vehicle Manufacturer

5    Defendants engaged in unfair or deceptive business practices in violation of the New York GBL.

6    Defendants deliberately withheld the information about the scope and nature of the Defective

7    ACUs to ensure that consumers would purchase the Class Vehicles.

8    397.    In the course of the Vehicle Manufacturer Defendants' business, they willfully

9    failed to disclose and actively concealed the dangerous risks posed by the Defective ACUs. The

10   Vehicle Manufacturer Defendants compounded the deception by repeatedly asserting that the

11   Class Vehicles and/or the Defective ACUs installed in them were safe, reliable, and of high

12   quality, and by claiming to be manufacturers that value safety.

13   398.    The Vehicle Manufacturer Defendants' unfair or deceptive acts or practices,

14   including these concealments, omissions, and suppressions of material facts, had a tendency or

15   capacity to mislead, tended to create a false impression in consumers, were likely to and did in

16   fact deceive reasonable consumers, including Plaintiff and members of the New York State Class,

17   about the true safety and reliability of Class Vehicles and/or the defective airbag systems installed

18   in them, the quality of the Vehicle Manufacturer Defendants' brands, and the true value of the

19   Class Vehicles.

20   399.    The Vehicle Manufacturer Defendants intentionally and knowingly misrepresented

21   material facts regarding the Class Vehicles and/or the Defective ACUs installed in them with an

22   intent to mislead Plaintiff and members of the New York State Class.

23   400.    Defendants knew or should have known that their conduct violated the New York

24   GBL.

25   401.    As alleged above, the Vehicle Manufacturer Defendants made material statements

26   about the safety and reliability of the Class Vehicles and/or the defective airbag systems installed

27   in them that were either false or misleading.

28   402.    To protect their profits and to avoid remediation costs and negative publicity, the

1  Vehicle Manufacturer Defendants concealed the dangers and risks posed by the Class Vehicles

2  and/or the Defective ACUs installed in them, and allowed unsuspecting new and used car

3  purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving

4  highly dangerous vehicles.

5      403.      The Vehicle Manufacturer Defendants owed Plaintiff and members of the New

6  York State Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the

7  Defective ACUs installed in them because the Vehicle Manufacturer Defendants:

8              a.   possessed exclusive knowledge of the dangers and risks posed by the

9                  foregoing;

10             b.   intentionally concealed the foregoing from Plaintiffs; and/or

11             c.   made incomplete representations about the safety and reliability of the

12                 foregoing generally, while purposefully withholding material facts from

13                 Plaintiffs that contradicted these representations.

14     404.      Because the Vehicle Manufacturer Defendants fraudulently concealed the

15  Defective ACUs in Class Vehicles, and disclosure of the Defective ACUs would cause a

16  reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class

17  Vehicles has greatly diminished. In light of the stigma attached to Class Vehicles by the Vehicle

18  Manufacturer Defendants' conduct, the Class Vehicles are now worth significantly less than they

19  otherwise would be.

20     405.      The Vehicle Manufacturer Defendants' failure to disclose and active concealment

21  of the dangers and risks posed by the Defective ACUs in Class Vehicles were material to Plaintiff

22  and members of the New York State Class. A vehicle made by a reputable manufacturer of safe

23  vehicles is worth more than an otherwise comparable vehicle made by a disreputable

24  manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

25     406.      Plaintiff and members of the New York State Class suffered ascertainable loss

26  caused by the Vehicle Manufacturer Defendants' misrepresentations and their failure to disclose

27  material information. Had they been aware of the defect that existed in the Class Vehicles,

28  Plaintiff and members of the New York State Class either would have paid less for their vehicles

1   or would not have purchased or leased them at all. Plaintiff and members of the New York State

2   Class did not receive the benefit of their bargain as a result of the Vehicle Manufacturer

3   Defendants' misconduct.

4        407.    The Vehicle Manufacturer Defendants' violations present a continuing risk to

5   Plaintiff and members of the New York State Class, as well as to the general public. The Vehicle

6   Manufacturer Defendants' unlawful acts and practices complained of herein affect the public

7   interest.

8        408.    As a direct and proximate result of the Vehicle Manufacturer Defendants'

9   violations of the New York GBL, Plaintiff and members of the New York State Class have

10  suffered injury-in-fact and/or actual damage.

11       409.    Therefore, Plaintiff and members of the New York State Class seek their actual

12  damages, punitive damages, an order enjoining the Vehicle Manufacturer Defendants' deceptive

13  acts or practices, costs of Court, attorney's fees, and all other appropriate and available remedies

14  under the N.Y. Gen. Bus. Law § 349.

**COUNT XXI**
**VIOLATION OF THE NEW YORK GENERAL BUSINESS LAW § 350**
**(N.Y. Gen. Bus. Law § 350)**
**(Against All Vehicle Manufacturer Defendants)**

18       410.    Plaintiff Christopher Berry (for the purpose of this section, "Plaintiff")

19  incorporates and re-alleges each preceding paragraph as though fully set forth herein.

20       411.    Plaintiff brings this claim on behalf of himself and all members of the Class, or

21  alternatively, members of the Class that reside and/or purchased or leased their Class Vehicles in

22  New York State, against the Vehicle Manufacturer Defendants.

23       412.    Defendants were and are engaged in the "conduct of business, trade or commerce"

24  within the meaning of N.Y. Gen. Bus. Law § 350.

25       413.    N.Y. Gen. Bus. Law § 350 makes unlawful "[f]alse advertising in the conduct of

26  any business, trade or commerce." False advertising includes "advertising, including labeling, of

27  a commodity . . . if such advertising is misleading in a material respect," taking into account "the

28

extent to which the advertising fails to reveal facts material in light of … representations [made] with respect to the commodity …." N.Y. Gen. Bus. Law § 350-a.

414.     The Vehicle Manufacturer Defendants caused to be made or disseminated through New York, through advertising, marketing and other publications, statements that were untrue or misleading, and that were known, or which by the exercise of reasonable care Defendants, should have known, to be untrue and misleading to Plaintiff and the New York State Class.

415.     The Vehicle Manufacturer Defendants have violated § 350 because the misrepresentations and omissions regarding the defect, and the Vehicle Manufacturer Defendants' failure to disclose and active concealing of the dangers and risks posed by the Class Vehicles and/or the Defective ACUs installed in them, as set forth above, were material and likely to deceive a reasonable consumer.

416.     Plaintiff and New York State Class members have suffered an injury, including the loss of money or property, as a result of the Vehicle Manufacturer Defendants' false advertising. In purchasing or leasing Class Vehicles with the Defective ACUs installed in them, Plaintiff and the New York State Class relied on the misrepresentations and/or omissions of the Vehicle Manufacturer Defendants with respect to the safety and reliability of the Class Vehicles and/or the Defective ACUs installed in them. The Vehicle Manufacturer Defendants' representations were false and/or misleading because they concealed the defect and safety issues seriously undermine the value of the Class Vehicles. Had Plaintiff and the New York State Class known this, they would not have purchased or leased their vehicles and/or not paid as much for them.

417.     Pursuant to N.Y. Gen. Bus. Law § 350 (e), Plaintiff and the New York State Class seeks monetary relief against the Vehicle Manufacturer Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500 each for New York State Class member. Because the Vehicle Manufacturer Defendants' conduct was committed willfully and knowingly, Plaintiff and New York State Class members are entitled to recover three times actual damages, up to $10,000, for each New York State Class member.

418.     Plaintiff and the New York State Class also seeks an order enjoining the Vehicle

Manufacturer Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under General Business Law § 350.

## COUNT XXII
### VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT
**(Wash. Rev. Code §§ 19.86.010, *et seq*.)**
**(Against All Defendants)**

419.     Plaintiff Dee Roberts (for the purpose of this section, "Plaintiff") incorporates and re-alleges each preceding paragraph as though fully set forth herein.

420.     Plaintiff brings this claim on behalf of herself and all members of the Class, or alternatively, members of the Class that reside and/or purchased or leased their Class Vehicles in the State of Washington, against all Defendants.

421.     Defendants, Plaintiffs, and Washington State Class members are "persons" within the meaning of Wash. Rev. Code § 19.86.010(1).

422.     Defendants are engaged in "trade" or "commerce" within the meaning of Wash. Rev. Code § 19.86.010(2).

423.     The Washington Consumer Protection Act ("Washington CPA") makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code § 19.86.020.

424.     In the course of Defendants' business, Defendants violated the Washington CPA by failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the Defective ACUs installed in them, as described above. Specifically, in marketing, offering for sale, and selling the defective Class Vehicles and/or the Defective ACUs installed in them, Defendants engaged in one or more of the following unfair or deceptive acts or practices within the meaning of Wash. Rev. Code § 19.86.010, et seq.: representing that the Class Vehicles and/or the Defective ACUs installed in them have characteristics or benefits that they do not have; representing that they are of a particular standard and quality when they are not; and/or advertising them with the intent not to sell them as advertised.

425.     Defendants have known of the Defective ACUs and actively concealed the dangers

1    and risks posed by the Class Vehicles and/or the Defective ACUs installed in them.

2    426.    Defendants' willfully failed to disclose and actively concealed the defect in the

3    Class Vehicles and/or the Defective ACUs installed in them by repeatedly asserting that the class

4    vehicles and/or the Defective ACUs installed in them were safe, reliable, and of high quality, and

5    by claiming to be reputable manufacturers that value safety.

6    427.    Defendants knew or should have known that their conduct violated the

7    Washington CPA.

8    428.    Defendants owed Plaintiff and members of the Washington State Class a duty to

9    disclose the true safety and reliability of the Class Vehicles and/or the Defective ACUs installed

10   in them because the Vehicle Manufacturer Defendants:

11         a.   possessed exclusive knowledge of the dangers and risks posed by the

12             foregoing;

13         b.   intentionally concealed the foregoing from Plaintiffs; and/or

14         c.   made incomplete representations about the safety and reliability of the

15             foregoing generally, while purposefully withholding material facts from

16             Plaintiffs that contradicted these representations.

17   429.    Because Defendants fraudulently concealed the Defective ACUs and/or the Class

18   Vehicles equipped with the Defective ACUs, and disclosure of the Defective ACUs would cause

19   a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class

20   Vehicles has greatly diminished. In light of the stigma attached to Class Vehicles by Defendants'

21   conduct, they are now worth significantly less than the otherwise would be.

22   430.    Defendants' failure to disclose and active concealment of the dangers and risks

23   posed by the Defective ACUs and/or the Class Vehicles equipped with the Defective ACUs were

24   material to Plaintiff Roberts and members of the Washington State Class. A vehicle made by a

25   reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle

26   made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly

27   remedies them.

28   431.    Plaintiff and members of the Washington State Class suffered ascertainable loss

1    caused by Defendants' misrepresentations and their failure to disclose material information. Had

2    they been aware of the Defective ACUs and/or the Class Vehicles equipped with the Defective

3    ACUs, Plaintiff, and members of the Washington State Class either would have paid less for their

4    vehicles or would not have purchased or leased them at all.

5        432.    Plaintiff, and the Washington State Class members, did not receive the benefit of

6    their bargain as a result of Defendants' misconduct.

7        433.    As a direct and proximate result of Defendants' violations of the Washington CPA,

8    the members of the Class have suffered injury-in-fact and/or actual damage.

9        434.    Pursuant to Wash. Rev. Code § 19.86.090, Plaintiff and members of the

10   Washington State Class seek an order enjoining Defendants' unfair and/or deceptive acts or

11   practices, and awarding damages and any other just and proper relief available under the

12   Washington CPA.

13                                  **COUNT XXIII**
                            **BREACH OF IMPLIED WARRANTIES**
14          **(Wash. Rev. Code §§ 62A.2-314, 62A.2-315, 62A.2A-103, and 62A.2A-212)**
                                 **(Against All Defendants)**
15

16       435.    Plaintiff Dee Roberts (for the purpose of this section, "Plaintiff") incorporates and

17   re-alleges each preceding paragraph as though fully set forth herein.

18       436.    Plaintiff brings this claim on behalf of herself and all members of the Class, or

19   alternatively, members of the Class that reside and/or purchased or leased their Class Vehicles in

20   Washington, against all Defendants.

21       437.    Defendants are and were at all relevant times "merchants" with respect to motor

22   vehicles and/or ACUs under Wash. Rev. Code §§62A.2-104(1), and 62A.2A-103(1)(t), and

23   "sellers" of motor vehicles and/or ACUs under § 62A.2-313(1)-(2).

24       438.    With respect to leases, the Vehicle Manufacturer Defendants are and were at all

25   relevant times "lessors" of motor vehicles under Wash. Rev. Code § 62A.2A-103(1)(p).

26       439.    The Class Vehicles are and were at all relevant times "goods" within the meaning

27   of Wash. Rev. Code §§ 62A.2-105(1) and 62A.2A-103(1)(h).

28

440.     The Class members are and were at all relevant times "buyers" with respect to the Class Vehicles and/or the Defective ACUs installed in them under Wash. Rev. Code § 62A.2-313(1).

441.     A warranty that the Class Vehicles and/or the Defective ACUs installed in them were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Wash. Rev. Code §§ 62A.2-314 and 62A.2A-212.

442.     Additionally, a warranty that the Class Vehicles and/or the Defective ACUs installed in them were fit for their particular purpose is implied by law pursuant Wash. Rev. Code §§ 62A.2-315.

443.     Defendants knew at the time of the sale of the Class Vehicles and/or the Defective ACUs installed in them, that the Class intended to use the vehicles in a manner requiring a particular standard of performance and durability, and that the Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

444.     The Defective ACUs and/or the Class Vehicles equipped with the Defective ACUs were not in merchantable condition, not fit for the ordinary purpose, and not fit for their particular purpose as a result of their inherent defects, as detailed above.

445.     Defendants were provided notice of the inherently dangerous and Defective ACUs by consumer complaints, NHTSA investigations, and their own internal investigations.

446.     Defendants' breaches of their implied warranties have caused damage to Plaintiff and the Washington State Class. The amount of damages will be proven at trial.

**COUNT XXIV**
**BREACH OF EXPRESS WARRANTY**
**(Wash. Rev. Code §§ 62A.2-313, 62A.2A-103, and 62A.2A-210)**
**(Against The Vehicle Manufacturer Defendants)**

447.     Plaintiff Dee Roberts (for the purpose of this section, "Plaintiff") incorporates and re-alleges each preceding paragraph as though fully set forth herein.

448.     Plaintiff brings this claim on behalf of herself and all members of the Class, or alternatively, members of the Class that reside and/or purchased or leased their Class Vehicles in

Washington, against the Vehicle Manufacturer Defendants.

449.     The Vehicle Manufacturer Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Wash. Rev. Code § 62A.2-104(1) and 62A.2A-103(1)(t), and "sellers" of motor vehicles under § 2.103(a)(4).

450.     With respect to leases, the Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under Wash. Rev. Code § 62A.2A-103(1)(p).

451.     The Class Vehicles are and were at all relevant times "goods" within the meaning of Wash. Rev. Code §§ 62A.2-105(1) and 62A.2A-103(1)(h).

452.     The Class members are and were at all relevant times "buyers" with respect to the Class Vehicles under Wash. Rev. Code § 62A.2-313(1).

453.     In connection with the purchase of all Class Vehicles, the Vehicle Manufacturer Defendants provided express warranties. Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance. Kia provides a limited basic warranty for a period of 5 years or 60,000 miles, whichever occurs first, and covers repairs to vehicles that fail to function properly during normal use. Honda provides a new vehicle limited warranty for a period of 3 years or 36,000 miles, whichever occurs first, and covers any repairs or replacements of any part that is defective in material or workmanship under normal use. Toyota provides a New Vehicle Limited Warranty for period of three years or 36,000 miles, whichever occurs first and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota. Additionally, the Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to the Class.

454.     The Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when the members of the Class purchased or leased their Class Vehicles.

455.     The Defective ACUs existed in the Class Vehicles at the time of sale or lease and within the warranty periods but the members of the Class had no knowledge of the existence of

the Defective ACUs, which was known and concealed by the Vehicle Manufacturer Defendants. Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform the members of the Class that the Class Vehicles contained the Defective ACUs during the warranty periods in order to wrongfully transfer the cost of repair or replacement of the Defective ACUs to the members of the Class.

456.    The Class Vehicles are not safe and reliable due to the Defective ACUs and owners and lessees of the vehicles have lost confidence in the ability of the Class Vehicles to perform the function of safe reliable transportation.

457.    The members of the Class could not have reasonably discovered the Defective ACUs.

458.    The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

459.    The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew the Class Vehicles contained the Defective ACUs and the safety risks associated with the defect. Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects, which cause airbags to not perform as warranted.

460.    Specifically, on information and belief, the Vehicle Manufacturer Defendants breached their express warranties by: (a) knowingly providing Plaintiff and members of the Washington State Class with Class Vehicles containing defects in material that were never disclosed to Plaintiff and members of the Washington State Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by the Vehicle Manufacturer Defendants.

461.    Affording each of the Vehicle Manufacturer Defendants a reasonable opportunity

to cure its breach of written warranties would be unnecessary and futile. At the time of the sale or lease of each Class Vehicle, each of the Vehicle Manufacturer Defendants knew, or should have known, or was reckless in not knowing of its misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the design defect.

462.    Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here. Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased defective products without informing consumers about the defect.

463.    Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make Plaintiff and members of the Washington State Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

464.    The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and Plaintiff and members of the Washington State Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

465.    As a direct and proximate result of the Vehicle Manufacturer Defendants' breach of express warranties, Plaintiff and members of the Washington State Class have been damaged in an amount to be determined at trial.

466.    Finally, because of the Vehicle Manufacturer Defendants' breach of express warranties as set forth herein Plaintiff and members of the Washington State Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and members of the Washington State Class the purchase or lease price of all Class Vehicles currently owned or leased, and request such other incidental and consequential damages as allowed.

**VIII. PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the members of the Nationwide Class and State Classes, respectfully request that the Court enter judgment against the Defendants as follows:

      a.   A declaration that any applicable statutes of limitations are tolled due to the fraudulent concealment alleged in this complaint, and that Defendants are estopped from relying on any statutes of limitations in defense;

      b.   An order enjoining Defendants from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

      c.   An award to Plaintiffs and Class members of compensatory, exemplary, and punitive remedies and damages and statutory penalties, including interest, in an amount to be proven at trial;

      d.   Injunctive and equitable relief in the form of a recall and program to repair, modify, and/or buy back all Class Vehicles, and to fully reimburse and make whole all Class members for all costs and economic losses;

      e.   Costs, restitution, compensatory damages for economic and out-of-pocket costs, multiple damages under applicable states' laws, punitive and exemplary damages under applicable law;

      f.   A Defendant-funded program, using transparent, consistent, and reasonable protocols, under which out-of-pocket and loss-of-use expenses and damages claims associated with Defective ACUs in Plaintiffs' and Class members' Class Vehicles, can be made and paid, such that Defendants, not the Class members, absorb the losses and expenses fairly traceable to the recalls of the vehicles and correction of the Defective ACUs;

      g.   A declaration that the Defendants must disgorge, for the benefit of Plaintiffs and Class members, all or part of the ill-gotten profits they received from their sale or lease of the Class Vehicles or make full restitution to Plaintiffs and Class members;

h.  An award of attorneys' fees and costs;

i.  An award of prejudgment and post judgment interest, as provided by law;

j.  Such other or further relief as the Court may deem appropriate, just, and equitable.

## IX. DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial for all claims so triable.

DATED:  July 18, 2019

**ROBINS KAPLAN LLP**

By: _____
Michael F. Ram

Michael F. Ram (SBN #104805)
Mram@robinskaplan.com
**ROBINS KAPLAN LLP**
2440 West El Camino Real
Suite 100
Mountain View, CA  94040
Telephone: 650 784 4007
Facsimile: 650 784 4041

*To be Admitted Pro Hac Vice:*
Stacey P. Slaughter (MN Bar No. 0296971)
Sslaughter@robinskaplan.com
J. Austin Hurt (MN Bar No. 0391802)
Ahurt@robinskaplan.com
Michael J. Pacelli (MN Bar No. 0399484)
Mpacelli@robinskaplan.com
**ROBINS KAPLAN LLP**
800 LaSalle Avenue
Suite 2800
Minneapolis, MN 55402
Telephone: 612 349 8500
Facsimile: 612 339 4181

*To be Admitted Pro Hac Vice:*
Samuel J. Strauss (WA Bar No. 46971)
Sam@turkestrauss.com
**TURKE & STRAUSS LLP**
613 Williamson Street
Suite 201
Madison, WI 53703
Telephone: 608 237 1775
Facsimile: 608 509 4423

**ATTORNEYS FOR PLAINTIFFS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28